# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

KRISTOPHER JOLLY, CHERYL
JOLLY, JEREMY LEE, AMY LEE,
MATTHEW CIPRIANI, SHAWN
O'SHELL, MALISSA O'SHELL,
PAUL MASCI, ANGELA MASCI,
NICHOLAS GETTLER, CHARLES
DRYSDALE, LANDON SIMMONS,
SARAH SIMMONS, SAMUEL L.
BANKS, AMANDA BANKS,
WILLIAM REED, HOLLY REED,
WESLEY MILLER, and SHANNON
MILLER,

        Plaintiffs,

v.                            Case No.   3:20-cv-1150-MMH-MCR

HOEGH AUTOLINERS SHIPPING
AS, HOEGH AUTOLINERS
MANAGEMENT AS, HORIZON
TERMINAL SERVICES, LLC.,
GRIMALDI DEEP SEA S.P.A., and
SSA ATLANTIC, LLC,

        Defendants.

_____

## O R D E R

**THIS CAUSE** is before the Court on four motions under Rule 12, Federal

Rules of Civil Procedure (Rule(s)), filed by Defendants in this case. See Grimaldi

Deep Sea S.P.A.'s Motion to Dismiss and/or For a More Definite Statement

and/or to Strike (Doc. 15; Grimalidi's Motion); SSA Atlantic, LLC's Dispositive

Motion to Dismiss and Brief in Support (Doc. 17; SSA's Motion); Hoegh Autoliners Shipping AS and Hoegh Autoliners Management AS's Amended Motion to Dismiss First Amended Complaint or in the Alternative Motion to Strike or For More Definite Statement (Doc. 36; Hoegh's Motion); and Horizon Terminal Services, LLC's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 40; Horizon's Motion) (collectively, the Motions). Plaintiffs have responded to the Motions. (Docs. 23, 25, 46, 48). The issues raised in the Motions are ripe for review.

## I.  Background

Plaintiffs are firefighters and first responders with Jacksonville Fire & Rescue (JFRD) [1] as well as several of their spouses. [2] (Doc. 5; Amended Complaint). On June 4, 2020, the M/V Hoegh Xiamen (the Vessel), a cargo ship, was berthed at the Blount Island Marine Terminal in Jacksonville, Florida. Id. ¶ 17. Defendant SSA Atlantic, LLC (SSA) was the stevedore responsible for loading approximately 1,500 "used/junked/wrecked vehicles" onto the Vessel for international transport. Id. The Vessel was owned by a nonparty but was bareboat chartered [3] to Defendants Hoegh Autoliners Shipping AS (Hoegh

---

[1] Plaintiffs Kristopher Jolly, Jeremy Lee, Mathew Cipriani, Shawn O'Shell, Paul Masci, Nicholas Gettler, Charles Drysdale, Landon Simmons, Samuel Banks, William Reed, and Wesley Miller (collectively, the Firemen).

[2] Plaintiffs Cheryl Jolly, Amy Lee, Malissa O'Shell, Angela Masci, Sarah Simmons, Amanda Banks, Holly Reed, and Shannon Miller (collectively, the Spouses).

[3] Also called a demise charter, this type of arrangement involves the full possession and control of a vessel being transferred without crew, provisions, fuel, or supplies to the charterer.

Shipping) and Hoegh Autoliners Management AS (Hoegh Management), who time chartered[4] the Vessel to Defendant Grimaldi Deep Sea S.P.A. (Grimaldi). Id. ¶¶ 19-20.

The Vessel caught fire shortly after the loading operations were completed. Id. ¶ 25. The Firemen were among approximately 120 JFRD personnel who responded to the scene, where they attempted to extinguish the fire and ensure the safety of the Vessel and its crew. Id. ¶ 27. When they arrived, JFRD personnel sought out the Vessel's crew to obtain information about the 15-floor Vessel and identify the location of the fire. Id. ¶¶ 29-30. However, the Vessel's crew spoke little English and could not communicate any meaningful information to JFRD, such as where the fire was located or any potentially hazardous conditions that would make fighting the fire more difficult. Id. ¶¶ 31-32. This delayed JFRD's response and allowed the fire to grow unabated for one hour and forty minutes. Id. ¶ 36.

After JFRD reconnaissance crews located the source of the fire, firefighter crews were sent in and periodically alternated in order to combat the blaze. Id. ¶¶ 33, 37, 40-41. The Firemen were part of the JFRD crew on board the Vessel when an explosion occurred. Id. ¶ 42. Trapped in a stairwell, the Firemen were

---

See Walker v. Braus, 995 F.2d 77, 81 (5th Cir. 1993).

[4] A time charter does not involve transfer of possession or control of a vessel; the owner of the vessel fully equips and maintains the vessel and retains responsibility for it. Walker, 995 F.2d at 81.

exposed to extreme temperatures and hit with the power of the blast. <u>Id.</u> ¶ 43. The Firemen suffered injuries that included severe burns, broken bones, lacerations, and emotional trauma. <u>Id.</u> The Spouses were deprived of the care, comfort, consortium, and services of their husbands because of the incident as well. <u>Id.</u> ¶ 46.

Plaintiffs filed suit in the Circuit Court for the Fourth Judicial Circuit, in and for Duval County, Florida, alleging four negligence claims against Defendants. (Doc. 1-3; Initial Complaint). Defendants removed the case based on this Court's diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1; Notice of Removal). After substantial briefing on the issue, the Court determined it had subject matter jurisdiction over this case and dismissed a fraudulently joined Defendant. (Doc. 62).

## II.   Legal Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true.   See <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002); <u>see also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002).   In addition, all reasonable inferences should be drawn in favor of the plaintiff. See <u>Randall v. Scott</u>, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. <u>Jackson v. Bellsouth Telecomm.</u>, 372 F.3d 1250, 1262-63 (11th Cir. 2004)

(citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## III. Discussion

The Court begins by noting the parties' apparent agreement that general maritime law applies in this case. <u>See</u> Amended Complaint ¶ 3; SSA's Motion at 3 (acknowledging "all parties agree [general maritime law] governs here."). Indeed, general maritime law—as opposed to state law—provides the remedy for a nonseafarer's injuries sustained while on a vessel in a state's navigable waters.[5] <u>Kermarec v. Campagnie Generale Transatlantique</u>, 358 U.S. 625, 628 (1959). Since Plaintiffs' injuries were sustained on the Vessel while it was berthed in Florida's navigable waters, the Court agrees with the parties that general maritime law applies to Plaintiffs' claims.

The Supreme Court has described a federal district court's role when sitting in admiralty as akin to "a common law court, subject to the authority of Congress to legislate otherwise . . . ." <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 489-90 (2008). That said, maritime law is not "solely the province of the Federal Judiciary," as Congress and state legislatures[6] have enacted laws that

---

[5] Though Plaintiffs' claims arise under general maritime law, they do not implicate any federal statutory laws that modify general maritime law. Federal statutory law covers injuries to seafarers, those involved in the maritime trade, and individuals injured on the high seas. <u>See</u> The Jones Act, 46 U.S.C. § 30104; The Death on High Seas Act, 46 U.S.C. § 30301; The Longshoremen & Harbor Workers' Compensation Act, 33 U.S.C. § 903. They do not cover nonseafaring firemen and their spouses alleged to have been injured while on a vessel in a state's navigable waters.

[6] Traditionally, state law could be used to supplement general maritime law so long as it did not: (1) conflict with an act of Congress, (2) work a material prejudice to a characteristic feature of general maritime law, or (3) interfere with the uniformity of general maritime law. <u>See</u> <u>S. Pac. Co. v. Jensen</u>, 244 U.S. 205, 216 (1917) <u>superseded by statute on other grounds</u>, Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, <u>as recognized in</u>

provide certain metes and bounds for the courts. <u>Dutra Grp. v. Batterton</u>, 139 S. Ct. 2275, 2278 (2019). Courts are to look primarily to these enactments for policy guidance, but can depart from them "in discrete instances based on long-established history. . . ." <u>Id.</u> (citations omitted). However, courts are to exercise caution in departing from legislative policies "in light of Congress's persistent pursuit of 'uniformity in the exercise of admiralty jurisdiction.'" <u>Id.</u> (citing <u>Miles v. Apex Marine Corp.</u>, 498 U.S. 19, 27 (1990)).

With that in mind, the Motions before the Court present several issues for the Court's determination. Most Defendants argue the Firemen's negligence claim fails to state a cause of action as a matter of law.[7] Defendants contend the Spouses are precluded from recovering for loss of consortium under general maritime law. Grimaldi, Hoegh Shipping, and Hoegh Management argue the Amended Complaint is not sufficiently clear and Plaintiffs should be required to replead their claims.[8] The same Defendants also move to strike several

---

Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor v. Perini N. River Assoc., 459 U.S. 297, 306 (1983). However, the factors set forth in <u>Jensen</u>, though instructive, have been undermined by subsequent Supreme Court decisions involving application of state law. <u>See, e.g.</u>, <u>Yamaha Motor Corp., U.S.A. v. Calhoun</u>, 516 U.S. 199, 214-15 (1996) (failing to cite <u>Jensen</u> and its factors in determining state wrongful death laws were available to supplement general maritime law, noting instead that state law must merely "be consistent with federal maritime principles and policies.").

[7] <u>See</u> Grimaldi's Motion at 2-3; SSA's Motion at 9-21; Hoegh's Motion at 6-12; Horizon's Motion at 4-6.

[8] Grimaldi's Motion at 3-4; Hoegh's Motion at 13-16.

paragraphs from the Amended Complaint under Rule 12(f).[9] Each argument will be addressed in turn.

A. Firemen's Negligence Claims

Under general maritime law, negligence is an actionable wrong that contains the same basic elements as a land-based negligence claim: (1) duty; (2) breach; (3) causation; and (4) damages. See In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 211 (5th Cir. 2010). The complicating factor in this case is the Firemen's choice of profession. Under the guise of common-law doctrines like assumption of risk, so-called "firefighter's rules" that prevented first responders from recovering against individuals whose negligence created the risk necessitating their presence at a scene took hold in American jurisprudence, including general maritime law. See McDaniel v. The M/S Lisholt, 180 F. Supp. 24, 26 (S.D.N.Y. 1959) aff'd, 282 F.2d 816 (2d Cir. 1960), cert. denied, 365 U.S. 814 (1961) (applying the firefighter's rule in a maritime case to preclude a firefighter from suing a shipowner based solely on the shipowner's negligence in starting the fire that necessitated the firefighter's presence on the ship); see also Kilpatrick v. Skylar, 548 So. 2d 215, 216 (Fla. 1989) (quoting P.J.'s of Daytona, Inc. v. Sorenson, 520 So. 2d 613, 614 (Fla. 5th DCA 1987)) (describing Florida's former "Fireman's Rule" as giving firefighters

---

[9] Grimaldi's Motion at 5; Hoegh's Motion at 13-16.

the legal status of a licensee and identifying the "sole duty" of a property owner "is to refrain from wanton negligence or willful conduct and to warn him of any defect or condition known to the owner or occupant to be dangerous . . . .").

The public policy reasons for these rules were sound:

> The fireman's rule permits individuals who require police or fire department assistance to summon aid without pausing to consider whether they will be held liable for consequences which, in most cases, are beyond their control. There is no question that police and firefighters work in hazardous occupations at great personal risk. It is because these dedicated public officials are willing to assume the risks attendant to their routine duties that citizens are able to rely on their protection.

Kilpatrick, 548 So. 2d at 217 (quoting Rishel v. Eastern Airlines, Inc., 466 So.2d 1136 (Fla. 3d DCA 1985)). However, common law doctrines like contributory negligence and assumption of risk underwent significant changes with the advent of comparative negligence. See Keegan v. Anchor Inns, Inc., 606 F.2d 35, 37-41 (3d Cir. 1979) (examining the history of express and implied assumption of risk and its place in modern frameworks of comparative negligence). Doctrines that proved to be complete bars to a plaintiff's recovery were characterized as "harsh" and discarded in favor of comparative negligence schemes that apportioned fault based on culpability. Id.; see also Tillman v. C.R. Bard, Inc., 96 F. Supp. 3d 1307, 1352-54 (M.D. Fla. 2015) (detailing Florida's treatment of assumption of risk following the adoption of comparative negligence). As a result, many states—including Florida—have abolished or largely ameliorated the harsh effects of the firefighter's rule in their states. See,

e.g., Fla. Stat. § 112.182 (abolishing Florida's firefighter's rule); N.J. Stat. Ann. § 2A:62A-21 (allowing first responders to sue any person whose simple negligence resulted in injury to the first responder); N.Y. General Municipal Law § 205-a (eliminating certain barriers to relief imposed by New York's former firefighter's rule and creating a cause of action for firemen to sue individuals responsible for injuries sustained during the performance of their duties); Christensen v. Murphy, 296 Or. 610, 620-21, 678 P.2d 1210 (1984) ("As a result of statutory abolition of implied assumption of risk, we hold that the 'fireman's rule' is abolished in Oregon as a rule of law and no longer can bar recovery of damages for personal injuries sustained by a public safety officer, in the course of his or her employment, as a result of a defendant's negligent conduct.").

Maritime law is no different. The notion of dividing damages among at-fault parties in admiralty cases dates back to England in 1815 and became established in American law in the nineteenth century. See Max Morris v. Curry, 137 U.S. 1, 12, 14-15 (1890) (noting the establishment of maritime division of damages rules and their adoption by U.S. courts in maritime personal injury cases). Approving these principles, the Supreme Court explained "the more equal distribution of justice, the dictates of humanity, the safety of life and limb, and the public good, will be best promoted by holding

vessels liable to bear some part of the actual pecuniary loss sustained by the libelant," even where both parties were negligent. Id. at 14-15.

General maritime law also does not distinguish between invitees and licensees for purposes of determining the duty owed to a person lawfully aboard a vessel. Kermarec, 358 U.S. at 631-32 (dismissing common law distinctions between invitees and licensees for purposes of determining legal duties in admiralty cases due to their principles being "alien to the law of the sea."). Rather, "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." Id. at 632.

While instructive, these cases do not expressly address the issue presented in this case. Despite this country's rich maritime history, analogous admiralty cases involving firefighters filing suit to recover for on-the-job injuries are scarce. In McDaniel, a fire broke out on a vessel moored in the Panama Canal Zone due in part to the shipowner's negligence. 180 F. Supp. at 25. The party seeking damages was a firefighter who was called to help fight the fire and remained on the ship as a fire watchman[10] after the fire had been extinguished. Id. When the ship's crew noticed a gaseous odor several hours after the fire was put out, the firefighter was called over to investigate. Id. The

---

[10] As a fire watchman, it was the firefighter's job to "prevent a further outbreak of the blaze" and ensure continued public safety. McDaniel, 180 F. Supp. at 26, 28.

gas exploded for an unknown reason, causing the firefighter to suffer severe injuries. Id. While the McDaniel court relied on the firefighter's rule to say the owner's culpability in starting the original fire was not dispositive of liability, id. at 26, the case is otherwise distinguishable from Plaintiffs' case. In McDaniel, the fire that summoned the firefighter was extinguished well before his injuries occurred. Id. Thus, the shipowner's negligence in starting the blaze was irrelevant. Indeed, the ship's crew told the firefighter everything they knew about the gas leak and he entered the hazardous area with full knowledge of the danger he was summoned to investigate. Id. at 28-29.

The facts of Pastore v. Taiyo Gyogyo, K.K. are more analogous to Plaintiffs' allegations in that Pastore involved a firefighter injured while fighting the fire he was called to combat. 571 F.2d 777, 780 (3d Cir. 1978). There, a vessel caught fire due to the stevedore's employees smoking in an area of the ship with flammable cargo. Id. at 780-81. Pastore, a firefighter employed by the City of Philadelphia, responded to the fire. Id. at 780. To reach the fire, Pastore had to use a ladder to descend into the ship. Id. Unbeknownst to Pastore and the other firefighters, the deck to which he was descending was filled with cargo covered by a tarpaulin, which disguised its appearance and made it unfit for heeling a ladder. Id. The ladder slipped and Pastore fell "some distance to the lower deck," which caused his injuries. Id. Pastore filed a negligence suit against the shipowner for failing to warn him about the dangerous condition of

the lower deck. <u>Id.</u> The shipowner filed a third-party claim against the stevedore for indemnity based on its role in starting the fire. <u>Id.</u> The case was tried and a jury returned a verdict in Pastore's favor against the shipowner and, in responding to special interrogatories, also found the stevedore proximately caused Pastore's injuries. <u>Id.</u> On appeal, the Third Circuit affirmed the jury verdict and overruled the district court's entry of judgment notwithstanding the verdict in favor of the stevedore. <u>Id.</u> at 783. In doing so, the <u>Pastore</u> court stated, "[t]he defendant's crew did not supply the information necessary to enable a land-oriented fire fighting unit to deal effectively with the unusual conditions aboard ship and that duty became triggered by the fire." <u>Id.</u> at 782. However, since Pastore did not assert claims against the stevedore, the Third Circuit did not address the exact issues presented in this case: whether a firefighter can directly recover from the party who negligently started a fire that caused his or her injuries under general maritime law.

Turning to cases dealing with rescuers more generally, <u>In re Garda Marine, Inc.</u> involved police officers who were injured in responding to a vessel's distress call while moored in the Port of Miami, Florida. No. 88-2282-CIV-HIGHSMITH (MISHLER), 1992 WL 321213, at *1 (S.D. Fla. Apr. 23, 1992). The rescuers responded to what they believed was a routine slip and fall injury suffered by two crewmembers. <u>Id.</u> at *4. However, in reality, there were toxic levels of carbon monoxide trapped in the ship's chain locker and deep tank due

to the negligent use of a gas-powered pump in the area without proper ventilation. Id. at *2-3. The captain of the ship was aware of the toxic fumes but did not tell the police officers when they arrived. Id. at *4. The police officers were unprepared for the dangerous conditions they faced trying to rescue the collapsed crewmembers and suffered injuries as a result. Id. at *4-6. The court made several findings in favor of the police officers, including: (1) the police officers were entitled to a warranty of seaworthiness because they boarded the vessel thinking it was seaworthy; (2) the shipowner had a duty to warn the police officers about the carbon monoxide problem when they arrived to the scene; and (3) the shipowner was liable to all those injured as a result of its negligence, including the rescuer who entered the deep tank despite knowledge that it contained toxic fumes. Id. at *9-10.

In Rogers v. Coastal Towing, L.L.C., a paramedic responded to a medical emergency on a ship in Louisiana's navigable waters. 723 F. Supp. 2d 929, 932 (E.D. La. 2010). The paramedic boarded the vessel via a gangplank that required him to jump three to four feet onto the deck below. Id. In doing so, he was injured and filed suit against the shipowner for negligence. Id. The shipowner moved for summary judgment based on Louisiana's Professional Rescuer's Doctrine, a state-law doctrine which barred first responders from recovering for injuries sustained during the performance of their duties. Id. at 932, 934. The district court refused to apply Louisiana's Professional Rescuer's

Doctrine, finding it incompatible with general maritime law under all three Jensen factors. Id. at 935-36 (citing Jensen, 244 U.S. at 216).

These cases help frame the various duties Defendants owed to the Firemen in this case. When the Firemen arrived at the Vessel, the shipowners, Hoegh Shipping and Hoegh Management, had an obligation to inform the Firemen of any known conditions that could be a danger to the Firemen in performing their duties. See McDaniel, Pastore, and In re Garda Marine, supra. The presence of the fire itself was inherently open, obvious, and disclosed. But the Firemen allege that the failure of the Vessel's crew to provide the Firemen with any information—including the location of the fire, how to navigate the Vessel, and the location of onboard fire hose connections—prevented the Firemen from efficiently fighting the fire, resulting in the blaze burning unabated for nearly two hours and increasing the risks associated with putting it out. See Amended Complaint ¶¶ 29-36. The allegations that the shipowners provided a crew incapable of communicating effectively, which failed to provide rescuers with information necessary for them to avoid added risks in performing their duties, plausibly state a claim that the shipowners breached the duty of reasonable care. See Pastore, 571 F.2d at 782. As such, the Firemen sufficiently allege causes of action against Hoegh Shipping and Hoegh Management under general maritime law.

With respect to the remaining Defendants, their involvement stems from their role in starting the fire by negligently maintaining or loading the Vessel. Amended Complaint ¶¶ 56, 60, 62, 65, 67. To determine whether the Firemen's allegations as to these Defendants are sufficient to support a negligence cause of action, the Court begins by looking at federal and state statutes for guidance. Dutra Grp., 139 S. Ct. at 2278. No federal enactments directly address whether firefighters or first responders can seek recovery under similar circumstances. See note 6, supra. Under state law, Florida's decision to abolish its firefighter's rule made it possible for firefighters, as invitees, to sue those whose negligence caused their presence at a scene.[11] Absent a "long-established history" in general maritime law to exclude such claims, the Supreme Court has been instructed that this Court abide by Florida's policy decision. Dutra Grp., 139 S. Ct. at 2278.

---

[11] The parties do not cite, and the Court is unaware of, any cases applying Florida law where a firefighter was successful in suing a party who negligently started a fire. However, Bennis v. State Chem. Mfg. Co., can arguably be read to support a firefighter's ability to do so following Florida's abolishment of its firefighter rule. 682 So. 2d 574, 577 (Fla. 4th DCA 1996). In that case, firefighters were called to an apartment complex due to the improper storage of hazardous chemicals. Id. at 575-76. The plaintiff was one of the firefighters who entered the apartment and inhaled the fumes, causing him injuries. Id. The Bennis court found the statute abolishing Florida's firefighter's rule did not apply retroactively, meaning it was still good law when the plaintiff was injured and precluded the plaintiff from recovering for "acts of simple negligence leading to the very risk necessitating the firefighter's presence . . . ." Id. at 577. However, inherent in the court's reasoning is that the opposite result would occur in cases arising after the abolishment of Florida's firefighter's rule. Moreover, other states that have abolished or modified their firefighter's rules in comparable ways have allowed a firefighter or first responder to maintain a claim like those brought by the Firemen in this case. See, e.g., Roma v. U.S., 344 F.3d 352, 362 (3d Cir. 2003) (finding New Jersey's law abolishing the state's firefighter's rule "no longer precludes tort claims by a firefighter against persons who negligently started the fire that injured him or her.").

The question, then, becomes whether Florida's policy of allowing firefighters to sue those who negligently start fires is consistent with general maritime law's principles and policies. <u>Yamaha Motor Corp., U.S.A.</u>, 516 U.S. at 214-15. As noted above, general maritime law imposes a duty of reasonable care to anyone on board a vessel. <u>Kermarec</u>, 358 U.S. at 632. This is consistent with Florida's policy of treating firefighters as invitees, rather than licensees, and establishing a more general duty of care compared to the heightened one that existed under the state's firefighter's rule. Additionally, the majority of courts applying general maritime law's duty of reasonable care have allowed first responders to recover against individuals whose negligence caused the emergency giving rise to their presence at a scene in some form or fashion.[12] These cases weigh against a finding of a "long-established history" of precluding claims like those asserted by the Firemen, as required for the Court to set aside Florida law.

Moreover, if there ever was a body of law that embraced policies that promote rescue and salvage, it is general maritime law. <u>See</u> <u>Grigsby v. Coastal Marine Service of Tex., Inc.</u>, 412 F.2d 1011, 1021 (5th Cir. 1969) ("Maritime law

---

[12] <u>See</u> <u>In re Garda</u>, 1992 WL 321213, at *10 (finding a police officer who knowingly entered a deep tank containing toxic fumes could recover against the shipowner who negligently allowed those fumes to accumulate); <u>Pastore</u>, 571 F.2d at 783 (affirming a jury's determination that a stevedore was indirectly liable for negligently starting a fire that injured a firefighter under indemnification theories); <u>but see</u> <u>McDaniel</u>, 180 F. Supp. at 26 (refusing to allow a firefighter to assert claims against the shipowner based solely on the shipowner's negligence in starting the original fire).

in every way and in every context encourages the salvor to salve— to save.").[13]
For example, the law of salvage is a uniquely maritime construct that rewards
those who voluntarily engage in rescuing persons or property in distress. <u>See</u>
<u>Fine v. Rockwood</u>, 895 F. Supp. 306, 308 (S.D. Fla. 1995) ("The salvage award,
which is unique to maritime and admiralty law, is not one of <u>quantum</u> <u>meruit</u>
as compensation for work performed[, but] is a bounty given on grounds of
public policy to encourage the rescue of life and property imperiled at sea and
to foster maritime commerce."). It would be wholly inconsistent for a body of
law that rewards the voluntary rescuer to in turn punish or disadvantage the
professional rescuer.

Therefore, Florida law and general maritime law are in harmony with
respect to whether rescuers, such as the Firemen, can recover against anyone
whose negligence caused the situation giving rise to their injuries. Both bodies
of law support a duty to act reasonably and in consideration for the safety of
others. If that duty is breached by negligently starting a fire that requires
rescue personnel to respond, the negligent party will be responsible for the
injuries to all who are affected by it—whether they be seamen protected by the
Jones Act or firefighters who knowingly enter a blaze to rescue life and
property. <u>See</u> <u>In re Garda</u>, 1992 WL 321213, at *9-10. Having provided

---

[13] In <u>Bonner v. City of Pritchard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh
Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed
down prior to the close of business on September 30, 1981.

sufficient allegations that Defendants were negligent in causing the fire on board the Vessel, the Firemen have plausibly alleged negligence causes of action against all Defendants.[14]

## B. Spouses' Loss of Consortium Claims

Defendants unanimously contend that the Spouses cannot recover for loss of consortium under general maritime law. The Spouses disagree, arguing that Eleventh Circuit jurisprudence on this issue is faulty and is no longer good law. The Court is equal parts bound and guided by the Eleventh Circuit in addressing this issue.

In two published opinions [15] involving the availability of loss of consortium damages in personal injury actions arising under general maritime law, the Eleventh Circuit has unequivocally concluded that recovery for nonpecuniary damages such as loss of consortium are precluded under similar circumstances. The first case, Lollie v. Brown Marine Serv., Inc., 995 F.2d 1565, 1565 (11th Cir. 1993), involved an appeal of a district court's decision granting

---

[14] The Court also briefly addresses SSA's argument regarding proximate causation. In its Motion, SSA argues its conduct cannot be said to have proximately caused the Firemen's injuries because the other Defendants' conduct constituted superseding causes. SSA's Motion at 18-21. However, in Pastore, a jury and the Third Circuit found sufficient proximate cause between a firefighter's injuries sustained while fighting a fire and the stevedore's actions in negligently starting the fire to justify a claim for indemnity against the stevedore. 571 F.2d at 783. At this early stage in the case, the Court finds the Amended Complaint contains sufficient allegations of proximate cause to survive dismissal.

[15] Only published opinions of the Eleventh Circuit create binding precedent; unpublished opinions are merely persuasive. 11th Cir. R. 36-2; see also Searcy v. R.J. Reynolds Tobacco Co., 902 F.3d 1342, 1355 n.5 (11th Cir. 2018).

judgment on the pleadings in favor of the defendant as to plaintiff's loss of consortium and society claims. In a succinct opinion, the Eleventh Circuit held "neither the Jones Act nor general maritime law authorizes recovery for loss of society or consortium in personal injury cases." Id. The court reiterated that holding in In re Amtrack Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993, 121 F.3d 1421, 1429 (11th Cir. 1997), to preclude punitive damages in cases brought under general maritime law. And in doing so, also "expressly extend[ed]" its conclusion regarding the unavailability of non-pecuniary damages. Id.

The Spouses argue, however, that these decisions are no longer good law following the Supreme Court's decision in Atlantic Sounding Co., Inc. v. Townsend, 557 U.S. 404, 425 (2009). Atlantic Sounding involved a claim by a seaman under the Jones Act for punitive damages against his employer based on the employer's willful breach of its duty to provide maintenance and cure.[16] The Supreme Court found in favor of the seaman and allowed his claim for punitive damages to proceed. Id. at 424-25. In doing so, the Court stated that its prior decision in Miles should not be read to broadly limit all damages available in maritime cases to those allowed under statutes like the Jones Act.

---

[16] Maintenance and cure involves a shipowner's duty "to provide food, lodging, and medical services to a seaman injured while serving the ship." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 441 (2001).

Atlantic Sounding, 557 U.S. at 424 ("The laudable quest for uniformity in admiralty does not require the narrowing of available damages to the lowest common denominator approved by Congress for distinct causes of action."). The case did not, however, address loss of consortium damages in personal injury cases brought under general maritime law.

In determining the effects of Atlantic Sounding on the precedent of Lollie and In re Amtrack, the Court is guided by the Eleventh Circuit's nonbinding, unpublished opinions. On two separate occasions since the issuance of the Atlantic Sounding decision, the Eleventh Circuit has been presented with the same argument the Spouses make in this case: Atlantic Sounding and its reframing of the rule of law established in Miles undermines the Eleventh Circuit's prior rulings on loss of consortium damages in personal injury actions arising under general maritime law. On both occasions, the Eleventh Circuit rejected the argument. Eslinger v. Celebrity Cruises, Inc., 772 F. App'x 872, 872-73 (11th Cir. 2019); Petersen v. NCL (Bahamas) Ltd., 748 F. App'x 246, 251-52 (11th Cir. 2018). In doing so, the Eleventh Circuit specifically found that Atlantic Sounding did not undermine its prior precedent precluding recovery of non-pecuniary damages. As such, the court affirmed the decisions disallowing loss of consortium claims in general maritime law personal injury cases, effectively reaffirming its decisions in In re Amtrak and Lollie. Eslinger, 772 F. App'x at 873; Petersen, 748 F. App'x at 252.

The Court is similarly persuaded that the Eleventh Circuit's binding precedent precluding loss of consortium damages in cases like this remains good law. The <u>Atlantic Sounding</u> decision did not involve loss of consortium claims or stand for the proposition that recovery for loss of consortium should be available for a land-based individual's spouse. <u>See</u> <u>Eslinger</u>, 775 F. App'x at 873 (noting the lack of support for the notion that spouses of land-based persons injured at sea should be allowed to recover for injuries spouses of seamen cannot). Therefore, <u>Atlantic Sounding</u> did not undermine or displace the Eleventh Circuit's prior decisions regarding loss of consortium damages in maritime personal injury cases, <u>see</u> <u>Peterson</u>, 748 F. App'x at 251, and the Court remains bound by the Eleventh Circuit precedent in <u>In re Amtrack</u> and <u>Lollie</u>. The Spouses' claims for loss of consortium are due to be dismissed.

## C. Motions for More Definite Statement

Grimaldi, Hoegh Shipping, and Hoegh Management alternatively move under Rule 12(e) to require Plaintiffs to provide a more definite statement. Pursuant to Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." <u>See</u> Rule 12(e). Such motions, however, are disfavored under the law, and are "'not to be used as a substitute for discovery.'" <u>See</u> <u>United Enter. Fund, LP v. Modern Bus. Assocs., Inc.</u>, No. 8:08-cv-1488-T-24MAP, 2008 WL 4790537, at *1 (M.D. Fla.

Oct. 28, 2008) (quoting <u>Eye Care Int'l, Inc. v. Underhill</u>, 92 F. Supp. 2d 1310, 1316 (M.D. Fla. 2000)).   Indeed, "the purpose of a more definite statement is to rectify unintelligibility in a complaint, not to provide more details that can reasonably be left to discovery." <u>See</u> <u>Wells Fargo Bank NA v. BBMJ, LLC</u>, No. 1:11–cv–127–MP–GRJ, 2012 WL 441286, at *1 (N.D. Fla. Feb. 10, 2012).

Here, Grimaldi seeks a more definite statement regarding "the basis of any allegations that Grimaldi was in possession of, in control of, and/or operating [the Vessel] as the vessel's time charterer." Grimaldi's Motion at 4. This information is pled: "Defendant GRIMALDI is an Italian for profit corporation . . . which was operating the [Vessel] <u>pursuant to a time charter</u>" with the Vessel's owners. Amended Complaint ¶ 13 (emphasis added). To the extent Grimaldi does not agree with Plaintiffs' characterization of the time charter's terms or Grimaldi's level of control over the Vessel, it is not because the Amended Complaint is so "vague or ambiguous that [Grimaldi] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rather, it is a factual dispute between the parties that is inappropriate for adjudication at this stage of the case.

Hoegh Management and Hoegh Shipping base their request for a more definite statement on two different grounds: (1) the allegations in paragraphs 21-24 of the Amended Complaint "fail to allege how any purported negligent acts on the part of defendants were instrumental in creating" a general

propensity for vessels transporting wrecked cars to catch fire; and (2) paragraphs 31-36 of the Amended Complaint do not detail "how the language spoken by crew members is attributable to any purported negligent act on the part of defendants." Heogh's Motion at 15-16. With respect to the former, there is nothing unintelligible about paragraphs 21-24. They provide context and general information about the known dangers associated with transporting wrecked vehicles on a roll on roll off cargo ship. The argument that Plaintiffs fail to allege how Defendants caused the propensity for fire is misplaced, as the allegations are not meant to fault Defendants for the propensity, just the fire their negligence allegedly started. See Amended Complaint ¶ 50.

With respect to the latter, the Amended Complaint includes allegations describing how the language barrier between the Vessel's crew and JFRD contributed to the Firemen's injuries. The Firemen were not provided information about the Vessel that would aid in fighting the fire or warned of conditions on board the Vessel such as the lack of adequate access to water for the Firemen's hoses. Amended Complaint ¶¶ 31-34, 38-39, 50. This arguably breached Hoegh Shipping and Hoegh Management's duty to supply necessary information to JFRD to aid their ability to fight the fire. See Pastore, 571 F.2d at 782. As such, the Court will not require Plaintiffs to provide a more definite statement.

D. <u>Motions to Strike</u>

Grimaldi, Hoegh Shipping, and Hoegh Management also ask the Court to strike portions of the Amended Complaint under Rule 12(f). Specifically, they argue paragraphs 21-24 of the Amended Complaint and any reference to the language spoken by the Vessel's crew should be stricken as impertinent and prejudicial to Defendants. Grimaldi's Motion at 5; Hoegh's Motion at 14-15. Plaintiffs respond by arguing the allegations at issue are not impertinent or scandalous; they provide accurate and useful context to the case. (Docs. 23 at 14-17; 46 at 17-18).

Rule 12(f) provides that upon motion by a party, the Court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. That said, a motion to strike is considered "a drastic remedy and is disfavored by the courts." <u>Schmidt v. Life Ins. Co. of N. Am.</u>, 289 F.R.D. 357, 358 (M.D. Fla. 2012) (citing <u>Reyher v. Trans World Airlines</u>, 881 F. Supp. 574, 576 (M.D. Fla. 1995)). Therefore, a Rule 12(f) motion "should be granted only if the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." <u>Id.</u> (internal quotations and citation omitted).

In this case, the allegations complained of by Grimaldi, Hoegh Shipping, and Hoegh Management should not be stricken. Paragraphs 21-24 are related to this case in several ways. For example, they describe a known propensity for

fire in ships of similar design to the Vessel, acknowledge the added risk associated with transporting vehicles in various states of disrepair, and specifically identify Grimaldi as having actual knowledge of these dangerous conditions. That information is not prejudicial to Defendants; Plaintiffs are not blaming Defendants for the inherent dangers associated with the operation. Rather, these facts provide context and relate to the foreseeability of the events that transpired on June 4, 2020. Similarly, the language spoken by the Vessel's crew relates to the primary breach alleged by Plaintiffs: the failure to provide information about the conditions on board the Vessel to effectively fight the fire and avoid unnecessary injuries. Hoegh Shipping and Hoegh Management do not cite any case law supporting a finding that a mere reference to the language spoken by nonparties is so prejudicial as to become scandalous under Rule 12(f) or warrant the drastic remedy of having the allegations stricken from a pleading.

Accordingly, it is

**ORDERED:**

1.     Grimaldi Deep Sea S.P.A.'s Motion to Dismiss and/or For a More Definite Statement and/or to Strike (Doc. 15); SSA Atlantic, LLC's Dispositive Motion to Dismiss and Brief in Support (Doc. 17); Hoegh Autoliners Shipping AS and Hoegh Autoliners Management AS's Amended Motion to Dismiss First Amended Complaint or in the

Alternative Motion to Strike or For More Definite Statement (Doc. 36); and Horizon Terminal Services, LLC's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 40) are **GRANTED in part** and **DENIED in part**.

2. The claims for loss of consortium asserted by Plaintiffs Cheryl Jolly, Amy Lee, Malissa O'Shell, Angela Masci, Sarah Simmons, Amanda Banks, Holly Reed, and Shannon Miller are **DISMISSED with prejudice**. The Clerk of the Court is directed to terminate these Plaintiffs.

3. All other relief requested in Defendants' Motions (Docs. 15, 17, 36, 40) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida this 28th day of June, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

lc 29
Copies to:

Counsel of Record
Pro Se Parties