**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KRISTOPHER JOLLY, et al.,
Plaintiffs,

v.                                          Case No. 3:20-cv-1150-MMH-MCR

HOEGH AUTOLINERS
SHIPPING, AS, et al.,
Defendants.

_____/

**SSA ATLANTIC, LLC'S MOTION TO EXCLUDE TESTIMONY**
**OF THOMAS BOLCAR**

SSA ATLANTIC, LLC now respectfully moves to exclude the testimony of

Thomas Bolcar, showing as follows:

**I.      INTRODUCTION**

In this case arising from injuries to firefighters sustained during a fire on the

M/V HOEGH XIAMEN ("Vessel"), Plaintiffs have attempted to introduce the expert

testimony of Mr. Thomas Bolcar.  Mr. Bolcar, *inter alia*, seeks to offer several opinions

about the performance of SSA in loading the used vehicles that were placed on the

Vessel prior to the fire.  (No competent evidence exists linking any of these vehicles to

the fire, as shown in SSA's <u>Motion for Summary Judgment</u>, <u>Motion to Exclude Testi-</u>

<u>mony of Paul Way</u>, and <u>Motion to Exclude Testimony of Rob Harshman</u>).

Mr. Bolcar's testimony against SSA, however, should be excluded.  First, Mr.

Bolcar seemingly attempted to offer a cause-and-origin opinion during his deposition,

which was not declared in his expert report and which Plaintiffs' counsel disclaimed

during the deposition. He should not be able to offer any such opinion. Second, Mr. Bolcar improperly declined to review key testimony and thus rendered his opinion based on incomplete data. Specifically, he relied on the testimony of a Grimaldi middle-manager in concluding that Grimaldi had a certain policy, but he did not review deposition testimony from that man's direct boss which contradicted it. This level of incomplete data goes beyond affecting merely the weight of an opinion and mandates its exclusion. Next, Mr. Bolcar attempted to testify as to standards in the industry based purely on his own *ipse dixit*, without making the requisite "fit" showing between his experience and the opinion offered. Finally, Mr. Bolcar attempted to opine on certain regulatory standards that he claimed supported his opinion, all while confusing the disjunctive and subjunctive and blatantly misreading the plain text in question. Allowing him to offer any interpretation of a plain-English regulation—much less an interpretation that is *wrong*—is improper and would not aid the trier of fact.

Mr. Bolcar's opinions against SSA, and the additional opinions designated herein, should be excluded.

## II. BACKGROUND

### A. This case.

This Court is familiar with the general background of this case, which involved a fire of unknown origin that began on the Vessel when she was moored at the Blount Island Terminal on June 4, 2020. *See generally* Doc. No. 5. At least four things could have started the fire: (1) a fault in the Vessel's electrical wiring; (2) flammable material left in a vehicle; (3) a fault in a vehicle's electrical system; or (4) human error (like

leaving a lit cigarette).  <u>Declaration of John Atherton, Ph.D.</u> ¶ 4 (attached as **Exhibit 1**).  Because only one of these causes even arguably had any tangential link to SSA, Plaintiffs hired an additional expert, "Captain" Thomas Bolcar,[1] to attempt to generate specifications of negligence against SSA.  As shown below, his methodology for doing so was improper and merits exclusion of his opinions against SSA.

**B.  Bolcar's opinions against SSA.**

Mr. Bolcar offered the following five opinions regarding SSA, which are taken directly from his expert report:

**SSA Atlantic**

1. <u>Opinion:</u> SSA Atlantic fell below the standard of care applicable to stevedores and failed to carry out the instructions of Grimaldi regarding the loading of unreasonably dangerous vehicles into the vessel and the proper way to render vehicles safe for transport.

2209 Glenwood Dr. Pt. Pleasant NJ 08742 Tel: 201-783-2604 Email: bolcarcaptain@gmail.com

**LSC**                                                                 Page **23** of **23**

a. SSA Atlantic stevedores were the ones physically loading the vehicles. Once vehicles are blocked in, it is difficult to go back and attempt to disconnect the batteries. The time to disconnect the battery and confirm the safety of the vehicle is at the time of loading, not after it is loaded and blocked by other vehicles.

b. SSA Atlantic was given clear, reinforced instructions on disconnecting batteries that they failed to follow.

c. SSA Atlantic failed to equip their "battery gang" with proper tools to open jammed hoods.

d. SSA Atlantic failed to reject and send vehicles off the vessel if unable to disconnect the batteries. SSA simply put up the windshield wipers and attached caution tape. That is not enough to ensure safety, given that many other options stated above could have been easily done to mitigate the hazard.

e. Any stevedore, with clear instructions, would have followed those instructions, including instructions on how to treat vehicles with potential batteries still connected.

---

[1] Mr. Bolcar styles himself as a captain, but the only situation in which he has seemingly ever held that role is transitorily in a volunteer fire department.  <u>Deposition of Thomas Bolcar</u> at 199 (attached as **Exhibit 2**).  He never achieved that rank in the Navy or any other branch of the service.  *Id.*  He uses the title because, "to be honest with you fellows, I deal with the Coast Guard and I deal with OSHA and if I put Bolcar Captain [sic] on my e-mail, they actually return them."  *Id.* at 200.

Expert Report of Thomas Bolcar at 23 (attached as **Exhibit 3**). Mr. Bolcar also feinted towards offering a cause-and-origin opinion, although his counsel quickly disclaimed him as a cause-and-origin witness. Bolcar Dep. at 50. Finally, Mr. Bolcar discussed some general International Maritime Dangerous Goods Codes ("IMDG Codes") and what he felt they required of ro-ro vessels transporting cars, but it quickly became clear that he was not familiar with the source he cited, having to consult it at lunch to see if it even applied after SSA's counsel pointed out an exception of which Mr. Bolcar was not even aware. *Id.* at 143.

Although the methodological problems with each specific opinion are discussed in more detail in the Argument and Citation of Authority, it should be noted that Mr. Bolcar's methodology was generally suspect. That is not surprising: although Mr. Bolcar still goes on vessels from time to time, he has not worked for a stevedoring firm in about 20 years. Bolcar Dep. at 85. Some of the methodological problems manifested in internal contradictions. For example, despite his report seemingly putting individual blame on SSA for not offloading certain cars whose batteries could not be accessed, he acknowledged that Hoegh and Grimaldi, not SSA, would have the more final say about whether to offload a vehicle from the Vessel. *Id.* at 116. While he argues that the parties all have responsibility for offloading vehicles whose batteries cannot be disconnected (referencing only his general "experience" to do so), this admission undermines his absolutist statement that "SSA failed to reject and send vehicles off the vessel if unable to disconnect the batteries." *Id.* at 23.

Aside from this general, glaring inconsistency near the core of his testimony, Mr. Bolcar simply failed to do any legwork to inform his opinions in this matter. For example, he based certain opinions about when port captains and stevedore foremen check batteries on "[w]atching it done," Bolcar Dep. at 90, but he:

- could not name the precise last time he saw "it" done,

- had not seen it done in the Port of Jacksonville,

- did not know if prior instances he had observed involved Grimaldi,

- did not know which stevedoring company he had observed,

- did not know if any of the potential stevedoring companies had policies governing battery disconnection,

- had never seen any of the policies, if so,

- did not do any research as to whether any such policies existed, and

- when asked whether he called any terminals to verify any of this information, answered "Oh, no. No."

Bolcar Dep. at 90-91. He did not talk to any other stevedores in connection with this case. *Id.* at 116. Even though he admitted that the timeline of the first 10 to 15 minutes for the fire was "critical," he did not bother to check the amended NTSB report that significantly altered NTSB's internal timeline of the fire and the Vessel crew's response to it. *Id.* at 170-71. Bolcar offered pages upon pages in his report about the history of the used car market, in which he simply made up numbers about automotive market share that he thought sounded correct. Bolcar Dep. at 72. He made other quantitative

statements—like that "[t]he volume of international vehicle transport increased astronomically" over a set period—which were based on no consultation of any studies or numerical analysis at all. *Id.* at 74.

Notably, near the conclusion of Mr. Bolcar's deposition, Plaintiffs' counsel attempted to clean up several of Mr. Bolcar's admissions during cross-examination. Mr. Bolcar then admitted that he had pre-discussed the questions and answers with Plaintiffs' counsel during the break (and while he was still sworn in as a witness). Bolcar Dep. at 299. This conference raises even more questions about the completeness of Mr. Bolcar's answers and is a primary reason that many courts do not allow substantive conferral during breaks at all. *See, e.g.*, *Plaisted v. Geisinger Med. Ctr.*, 210 F.R.D. 527, 535 (M.D. Pa. 2002) ("During a civil trial, a witness and his ... lawyer are not permitted to confer at their pleasure during the witness's testimony.... The same is true at a deposition.").

With this factual background and general lack of rigor in mind, SSA now shows that Mr. Bolcar's specific opinions as to SSA, plus his general pseudo-cause-and-origin opinion and his opinions about standards including the IMDG Code, must be excluded.

### III. ARGUMENT AND CITATION OF AUTHORITY

#### A. Standard of Review

Expert testimony is only admissible if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;
**(c)** the testimony is the product of reliable principles and methods; and
**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Eleventh Circuit would review the Court's decision to exclude Mr. Bolcar's opinions about SSA only for an abuse of discretion.  *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 921 (11th Cir. 1998).

### B.  Bolcar may not offer any cause and origin opinions.

First, and most basically, Mr. Bolcar may not offer any cause-and-origin opinions about the source of the fire on the Vessel, its spread, or anything to do with any party's role in that fire beginning.  Mr. Bolcar tried to offer such opinions in his deposition, *see* <u>Bolcar Dep.</u> at 201, but he did not declare them in his expert report, and his attorney explicitly disclaimed any intent to use him as a cause-and-origin expert.  <u>Bolcar Dep.</u> at 50:15-18; *see also generally* <u>Bolcar Report</u>.  Mr. Bolcar may not offer opinions that he did not declare in his expert report and that his attorney explicitly disclaimed, because at this point, Defendants have a significant reliance interest on both the scope of that report and on Plaintiffs' counsel's representation that such opinions would not be offered.  *See, e.g.*, *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655, 663 (M.D. Fla. 2012), *aff'd,* 725 F.3d 1377 (Fed. Cir. 2013) (mandating exclusion of new and undeclared testing protocol).  An expert "report is deficient if it fails to include any of the *underlying conclusions* on which the expert's ultimate opinions are based[;] [b]ald conclusions on the ultimate issues do not alone amount to a detailed and complete written report of the expert's expected testimony."

*Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 211 (S.D.N.Y. 2021) (quotations

omitted, alterations in original). Inadequate or partial disclosure is just as bad. Thus,

when a report "provide[s] a single paragraph to explain the expert's anticipated opin-

ion and the basis for it," that is not the "sufficient specificity to allow [a defendant] to

prepare for rebuttal or cross-examination" and mandates exclusion. *Romero v. Drum-

mond Co.*, 552 F.3d 1303, 1323 (11th Cir. 2008).

Mr. Bolcar cannot offer any opinions not disclosed in his expert report, includ-

ing any opinion as to the origin or cause of this fire.[2]

**C. Bolcar cannot offer opinions (b)-(e) because they are based on methodologi-**

**cally unsound, spoon-fed information from counsel.**

Mr. Bolcar's opinions (b) – (e) all hinge on his interpretation of Defendant

Grimaldi's battery-disconnect instructions:

> b. SSA Atlantic was given clear, reinforced instructions on disconnecting batteries that they failed to follow.
>
> c. SSA Atlantic failed to equip their "battery gang" with proper tools to open jammed hoods.
>
> d. SSA Atlantic failed to reject and send vehicles off the vessel if unable to disconnect the batteries. SSA simply put up the windshield wipers and attached caution tape. That is not enough to ensure safety, given that many other options stated above could have been easily done to mitigate the hazard.
>
> e. Any stevedore, with clear instructions, would have followed those instructions, including instructions on how to treat vehicles with potential batteries still connected.

---

[2] Notably, Mr. Bolcar also employed no methodology whatsoever in developing or rendering his opinion on the origin of the fire, even if he *had* properly declared the opinion or had qualifications to offer it. He randomly decided that there was a ".1%" chance of any other cause of the fire (with no math involved), Bolcar Dep. at 251, then admitted that he "cannot rule out" certain human factors, *id.* at 216-217, and admitted that he did not know where any of the cars that still had batteries connected were even located on Deck 8. *Id.* at 240-41.

<u>Bolcar Report</u> at 23.  Subsections (b) and (e) explicitly reference those instructions, and the criticisms in subsections (c) and (d) rely on the idea that a 100% disconnection rate was required.  However, Mr. Bolcar considered only selective testimony to reach those opinions, and the testimony he chose to ignore (and not even read) was so profoundly important that its omission renders his opinions the product of incomplete data.  Because he considered only testimony and documentation that was advantageous to the opinion he wished to render, these opinions must be excluded.

Mr. Bolcar testified that he understood Grimaldi's battery disconnect policy to require that "[a]ll cars loaded had to have the batteries disconnected."  <u>Bolcar Dep.</u> at 102.  This is the policy on which his opinions (b) – (e) are based.  He relied solely on the deposition of Michael Loeuis, a mid-level Grimaldi staffer, in forming these opinions.  <u>Bolcar Dep.</u> at 104-05.  Yet Mr. Bolcar chose not to read the deposition of Giuliano Petrellese, who was Mr. Loeuis's *direct superior* within Grimaldi, and who gave both an individual deposition and a 30(b)(6) deposition on behalf of Grimaldi.  <u>Bolcar Dep.</u> at 106-07, 301-04; <u>Deposition of Michael Loeuis</u> at 17 (attached as **Exhibit 4**) (noting that Petrellese was his "direct boss").  This omission was not akin to the failure to consider testimony of a minor witness; Mr. Bolcar ignored the testimony of the person Grimaldi designated to speak on behalf of the entire company in this litigation.

Mr. Petrellese's testimony was critical and devastates Mr. Bolcar's opinion:  in his individual deposition, Petrellese admitted that Grimaldi is well aware that "[i]t can happen [units being left connected], for sure, because it's not possible to – to – to have 100% of the units disconnect – with the batteries disconnected.  We try our best to

minimize – to minimize fire risks." <u>Individual Deposition of Giuliano Petrellese</u> at 29 (attached as **Exhibit 5**).  In other words, Petrellese admitted that whatever is written on paper, Grimaldi understands that there will <u>never be a 100% disconnection rate for vehicles that stevedores load onto the Vessel.</u>  This testimony obviously directly contradicts Mr. Bolcar's assumption that Grimaldi actually required 100% of cars to be disconnected.

While an expert's failure to examine certain non-critical materials can sometimes to go the weight of her testimony, rather than its admissibility, that is not the case when an expert's failure to review key material leads to an opinion based on insufficient data.  For example, in *Cordoves v. Miami-Dade Cnty.*, an expert who opined about mall personnel's service-animal compliance had reviewed deposition testimony, but *not* the same deponent's personnel file and training records. 104 F. Supp. 3d 1350, 1362 (S.D. Fla. 2015).  Accordingly, the expert's opinion about whether the personnel in question were properly trained was <u>inadmissible</u>: the failure to consider evidence did not just go to weight, it mandated exclusion altogether.

Failure to consider critical testimony already supports exclusion, as shown above, but it is even worse if the spoon-fed testimony that the expert <u>does</u> consider is part of Plaintiffs' summary of the case or is designed to fit into a preordained narrative. Assumptions based on the "word of [a party's] counsel" are inherently "not reliable." *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 726-27 (E.D. Wis. 2008).  An expert must "independently verif[y] the reliability of the data **before** opining on" an aspect of the case.  *Id.* (emphasis added).  When an expert fails to base his conclusions

on an independent analysis of hard data or other facts, and instead bases his conclusions on a counsel's summary or a cherry-picked amalgam of facts, his "opinions are similarly tainted with the foundational concerns discussed above." *Id.* "Any probative value [the expert's] opinions may have with regard to [the tainted testimony] is outweighed by the danger of unfair prejudice and the possibility of misleading the jury." *Id.* An expert's "reliance upon the spoonfed depositions" from plaintiff's counsel may lead "him to draw questionable conclusions about [the case] that he might not have drawn had he properly reviewed all of the depositions in an unfiltered fashion." *Crowley v. Chait*, 322 F. Supp. 2d 530 (D.N.J. 2004). "By reviewing only those depositions provided to him by Plaintiff's counsel, and by reviewing what appears to be for the most part only preselected excerpts of those depositions, [an expert may] rel[y] on information that is simply too unreliable to be trusted." *Id. See also, e.g., In re TMI,* 193 F.3d 613, 697–98 (3rd Cir. 1999), *amended on unrelated grounds by In re TMI*, 199 F.3d 158 (2000) (upholding exclusion of expert testimony where sole basis for the testimony was summaries prepared by party's attorney).

Both of these factors are present here. A full 40% of Mr. Bolcar's contentions against SSA specifically reference his interpretation of Grimaldi's battery disconnect instructions. Another 40% of his opinions clearly rely on his misapprehension that Grimaldi actually expected 100% battery disconnection rates. To get to those conclusions, he relied on the testimony of a middle manager, without availing himself of the testimony of *that middle manager's own boss*, who testified that Grimaldi recognized that 100% compliance was "not possible." This is at least as critical an omission as the

omitted personnel and training files in *Cordoves.* At least the *Cordoves* records could perhaps be supplementing the existing deposition testimony; here, Mr. Petrellese <u>contradicts</u> his employee. And even more troublingly, the testimony that was omitted from Mr. Bolcar's review was the very testimony that could undermine his position. Rather, he seemingly relied on the deposition testimony that would likely be emphasized in a summary from Plaintiffs' counsel, because it is the more helpful version of events to Plaintiffs' case.[3] This omission is doubly important, because Bolcar testified that SSA should follow Grimaldi's instructions. Bolcar Dep. at 129.

Because Mr. Bolcar declined to review critical information that was at the core of 80% of his opinions, and because the only information he *did* review seems tailor-made to advance a preordained narrative, his opinions must be excluded.

**D. Bolcar cannot offer opinion (a), regarding timing of disconnecting batteries, because it is pure *ipse dixit.***

Bolcar's only remaining opinion against SSA, which is designated as opinion (a) in his Report, is that SSA should have disconnected the cars' batteries immediately upon bringing the vehicles onto the Vessel. He bases this opinion purely on his experience. <u>Bolcar Dep.</u> at 117. Mr. Bolcar testified that disconnecting the batteries immediately upon loading the cars was "industry standard at the time of the fire" but can

---

[3] To be clear, no accusation is made against Plaintiffs' counsel in this regard. There is no indication whatsoever that the Petrellese deposition was not provided to the witness or that he was instructed not to review it. Indeed, his Report indicates that at least one Petrellese deposition *was* provided. Rather, SSA simply notes that Mr. Bolcar likely read the deposition that Plaintiffs' counsel flagged as helpful and then declined to do the required work to verify his opinions and to ensure that he had complete data by reviewing other critical testimony.

say only that he based that opinion on "general knowledge again." *Id.* at 127.  Yet he had no idea if this procedure is the "industry standard" anywhere south of Baltimore. *Id.* at 127.  This opinion is not sufficiently reliable to reach the jury.

An expert cannot base his opinion purely on experience unless he can "explain what part of his experience qualifies him to opine on these issues and reach these conclusions." *Pro. Tank Cleaning, Inc. v. JAG Indus. Servs., Inc.*, No. 19-62045-CIV, 2020 WL 13614901, at *5 (S.D. Fla. June 5, 2020) (citing case).  Indeed, a witness must note "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* (citing Committee Note).

Bolcar has done nothing of the sort.  His report does not adequately link his experience to his opinions, nor does it show why the experience is a sufficient basis for the opinion.  Indeed, he undermines the black-letter nature of his opinion almost immediately, noting that there is "[s]ome leeway" in the procedure he described and that "troublesome vehicle[s]" can be put off to the side for work and hopefully be parked later.  Bolcar Report at 18-19.  But allowing for "some leeway" without any sort of rigorous explanation simply forces the jury to take Bolcar at his word that *these* procedures were flawed, which is exactly what Rule 702 prohibits.  *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 289 (4th Cir. 2021) (excluding expert's opinion that industry standards required manufacturer to test a product when he could not articulate the specific test, because jury would have to take his word for it that industry standard had been breached at all).

More critically still, Mr. Bolcar apparently does not know if the procedure he described as the "industry standard" is actually standard anywhere south of Baltimore. Bolcar Dep. at 127. An expert cannot infer from his narrow experience in one area of an industry that the rest of the industry necessarily behaves like his corner of it once did. *Butler v. First Acceptance Ins. Co., Inc.*, 652 F. Supp. 2d 1264 (N.D. Ga. 2009) ("While Mr. Puckett has handled thousands of time-limit demand letters, his experience with a single insurance company cannot translate into knowledge of the industry standards."); *see also, e.g.*, *Halliday v. Cruise Ship Excursions, Inc.*, No. ST-14-CV-146, 2016 WL 6635157, at *9 (V.I. Super. Ct. Nov. 4, 2016) (holding that opinion that railing was unsafe based on "[g]eneral industry standards of practice" was ipse dixit and should be excluded). And that makes sense: regional variations are inevitable in any industry, and for an expert to testify that a company violated some industry standard based on its conduct in a region far from his home base, he should have some actual knowledge of whether that opinion is true. But here, Mr. Bolcar's testimony reveals no such knowledge.

Because Mr. Bolcar relies solely on his *ipse dixit* to establish the "industry standard" undergirding his opinion (a) against SSA, and because he clearly lacks the experience and methodology to rely solely on his experience, his opinion should be excluded.

**E. Bolcar cannot offer any opinion that official codes (including IMDG Codes) require SSA to disconnect car batteries in this situation.**

Mr. Bolcar also cannot offer any opinion that regulations, including IMDG 3166 and Special Provision 961, require disconnection of batteries prior to placing vessels on a ro-ro ship generally or that they required SSA to do so here specifically. His testimony revealed that he was not a reliable mouthpiece for those tests, that he has adopted an incorrect interpretation of them, and that his testimony as to them would not help the jury.

First, as a general proposition, an expert cannot offer an interpretation of a written guideline that contradicts the plain text of that guideline, thereby blessing the incorrect interpretation with his imprimatur as an expert. *See, e.g.*, *Anderson v. Atlanta Gas Light Co.*, 324 Ga. App. 801, 810 n.16, 751 S.E.2d 589, 595 n.16 (2013) (noting that expert was contradicted by plain text of regulations on which plaintiffs attempted to rely and affirming exclusion). Federal courts have policed this boundary as well, holding experts to the actual text of regulations or outside sources, and not just blindly accepting their word as to what those texts require. *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 289 (4th Cir. 2021) (upholding expert exclusion when, "[w]hile initially testifying that ASTM D6039 barred manufacturers from putting handholds on crates, Dr. Singh later admitted that ASTM D6039 said nothing one way or the other about handholds").

Here, Mr. Bolcar made the oldest textual error in the book: he swapped a disjunctive "or" for a conjunctive "and" when interpreting Special Provision 961. That special provision provides exceptions to the ordinary rules for carrying battery cells on a Vessel.[4] Under the plain text of the provision, if *any* of the exceptions applies, then the vehicle is excepted. *See* Special Provision 961 ("Internal combustion engines, fuel cell engines, vehicles, and battery-powered equipment are not subject to the provisions of this Code if **any** of the following conditions are met:") (emphasis added). But Mr. Bolcar treated the multiple enumerated exceptions as *conjunctive*, such that the exception could only apply if they were **all** met. *See* Bolcar Report at 19 ("Special Provision 961 of the IMDG code allows these items to be shipped as non-dangerous goods <u>if the following requirements</u> are met:") (emphasis added).

There was no underlying methodology to Mr. Bolcar's misreading of the regulation, and he did not have a satisfactory explanation for his reading of the regulation. In fact, he had to check the regulation during the deposition lunch break to formulate his rebuttal. Bolcar Dep. at 142. He admitted that he had never researched the exception *prior* to his deposition. *Id.* at 143.

This exchange demonstrates two reasons for exclusion. First, Mr. Bolcar appears to be wrong about the text of the exclusion. He later tried a different route to saving his testimony that he had worked up at lunch with Plaintiffs' counsel, Bolcar

---

[4] *See* Special Provision 961, *available at* <<u>https://www.bpa.gov.my/media/notice/1466580085_Appendix%201%20-%20Special%20Provision%209614.pdf</u>> (last accessed July 26, 2023).

<u>Dep.</u> at 146, but no amount of additional testimony could change that he had read a conjunctive requirement into a disjunctive text.

More importantly, Mr. Bolcar demonstrated his complete lack of expertise or fluency in the subject regulations. Even if his theory somehow became correct when he updated it at lunchtime,[5] the fact that he needed Plaintiffs' counsel to educate him during a deposition break on the very regulation on which he based his opinions is telling. Experts testify to the jury because they can add something unique and valuable to the proceedings, not so they can be a mouthpiece for *ad hoc* reinterpretations of misunderstood regulatory text.

For the same reasons, Mr. Bolcar's testimony on this point would not assist the trier of fact. First, the jury need not be burdened by Mr. Bolcar's guesswork, as shown above, when any juror who understands English conjunctions will fare better against the regulatory text than Mr. Bolcar did. "The most common reason for excluding opinion testimony that gives legal conclusion is lack of helpfulness.... The testimony supplies the jury with no information other than the witness's view of how the verdict should read." *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) (quoting secondary source) (alterations in original). Here, Mr. Bolcar clearly does not have any knowledge regarding the relevant code beyond simply *mis*reading its text and

---

[5] Because the "update" to the theory was provided only in response to deposition questioning and was not contained in Bolcar's expert report, it would not be permissible under Rule 37 regardless. *See, e.g.*, *Romero v. Drummond Co.*, 552 F.3d 1303, 1323 (11th Cir. 2008) (describing exclusion as Rule 37 sanction).

(incorrectly) guessing at what its plain words say, a task much more properly accomplished by a jury. His opinion on IMDG 3611 should be excluded on these grounds as well.

## IV.    CONCLUSION

Mr. Bolcar brings nothing to the table except for "experience"—experience that, as his deposition showed, was not a match for his opinions regarding proper procedures in the Port of Jacksonville. He did not make up for these deficiencies with effort or significant research as to his opinions against SSA, and indeed, he failed to even review crucial relevant evidence. Without that evidence, including critical deposition testimony, his core opinions against SSA are based on incomplete data and cannot survive. He also cannot testify as to his understanding of a regulation of which he clearly has no special knowledge, especially when the jury does not need expert testimony to understand that regulation at all. Finally, he may not offer opinions that were not declared in his Rule 37 report and for which Plaintiffs' counsel attempted to prevent him from opining at all, including any opinion on cause and origin.

The Court should ***EXCLUDE*** any cause-and-origin opinion of Mr. Bolcar, exclude any opinion he wishes to offer on regulations governing battery disconnection or ro-ro vessels, and exclude his opinions regarding SSA.

## RULE 3.01(g) CERTIFICATION

Pursuant to L.R. 3.01(g), the undersigned certifies that he has conferred in good faith with counsel for the Plaintiffs regarding this motion by email and plaintiffs' counsel could not consent or object in the time frame. While Plaintiffs' counsel will contest

any blanket challenges to their experts, to the extent this motion seeks to limit particular opinions, they would need more specific information about this motion. Pursuant to L.R. 3.01(g)(3), counsel for the Defendant will continue to diligently seek to communicate with opposing counsel for three days and will supplement this motion accordingly.

Respectfully submitted, this 1st day of August, 2023.

| | BOUHAN FALLIGANT, LLP |
|---|---|
| One West Park Avenue (31401) | |
| P.O. Box 2139 | /s/ Todd M. Baiad |
| Savannah, GA 31402-2139 | TODD M. BAIAD |
| Telephone: (912) 232-7000 | Georgia Bar No: 031605 |
| Facsimile: (912) 233-0811 | LUCAS D. BRADLEY |
| tmbaiad@bouhan.com | Georgia Bar No: 672136 |
| ldbradley@bouhan.com | Attorneys for SSA Atlantic, LLC |

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of August, 2023, the foregoing document is being served on all counsel of record identified on the Court's CM/ECF server for this action via the Court's Notification of Electronic Filing system.

| | BOUHAN FALLIGANT, LLP |
|---|---|
| One West Park Avenue (31401) | |
| P.O. Box 2139 | /s/ Todd M. Baiad |
| Savannah, GA 31402-2139 | TODD M. BAIAD |
| Telephone: (912) 232-7000 | Georgia Bar No: 031605 |
| Facsimile: (912) 233-0811 | LUCAS D. BRADLEY |
| tmbaiad@bouhan.com | Georgia Bar No: 672136 |
| ldbradley@bouhan.com | Attorneys for SSA Atlantic, LLC |