IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Case No.: 3:20-cv-1150-J-34PDB

KRISTOPHER JOLLY and CHERYL
JOLLY, his wife; JEREMY LEE and
AMY LEE, his wife; MATTHEW CIPRIANI;
SHAWN O'SHELL and MALISSA O'SHELL,
his wife; PAUL MASCI and ANGELA MASCI,
his wife; NICHOLAS GETTLER; CHARLES
DRYSDALE; LANDON SIMMONS and
SARAH SIMMONS, his wife; SAMUEL L.
BANKS and AMANDA BANKS, his wife;
WILLIAM REED and HOLLY REED,
his wife; and WESLEY MILLER and
SHANNON MILLER, his wife;

      Plaintiffs,
vs.

HOEGH AUTOLINERS SHIPPING AS;
HOEGH AUTOLINERS MANAGEMENT AS;
HOEGH AUTOLINERS, INC.; HORIZON
TERMINAL SERVICES, LLC; GRIMALDI
DEEP SEA S.P.A.; and SSA ATLANTIC, INC.,

      Defendants.
_____/

## DEFENDANT, GRIMALDI DEEP SEA S.P.A'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS OF NEGLIGENCE

  COMES NOW the Defendant, GRIMALDI DEEP SEA S.P.A. ("Grimaldi"),

by and through its undersigned counsel, and respectfully moves this Honorable

Court for an entry of summary judgment on Plaintiffs claims of negligence against Grimaldi as alleged in Plaintiff's First Amended Complaint (doc.5).

## MEMORANDUM IN SUPPORT OF MOTION

This action concerns personal injury claims alleged by Plaintiff's arising from a fire and explosion(s) which occurred on board *Hoegh Xiamen* on June 4, 2020, while Plaintiffs were engaged in firefighting efforts on the vessel which was docked at the Blount Island Marine Terminal in the Port of Jacksonville,(doc. 5).

In response to Plaintiff's allegations, Grimaldi appeared and filed an Answer and Affirmative Defenses, which included denying negligence on the part of Grimaldi (doc. 68).

Grimaldi notes that in Plaintiff's First Amended Complaint, paragraphs No. 52 through 57 (doc. 5), Plaintiffs make various allegations against Grimaldi, all related to Grimaldi's alleged possession, control, and operation of *Hoegh Xiamen* pursuant to Grimaldi's time charter with Hoegh Shipping and/ or Hoegh Management. However, the Plaintiff's First Amended Complaint makes no allegations of any fault on the part of Grimaldi arising from or based on Grimaldi's alleged breach of any of the terms and conditions of the time charter. Instead, Plaintiffs allege that Grimaldi was negligent with respect to maintaining or loading the car cargo on *Hoegh Xiamen* (doc. 5 paragraphs No. 52 through 57).

Grimaldi notes that the substantive law applicable to the rights and duties of the parties in this action, based on their pleadings, and an Order earlier entered by the Court, is general maritime law (doc. 67).

## SUMMARY JUDGMENT STANDARD

Grimaldi contends that the summary judgment standard applicable to this Motion for Summary Judgment incorporates both the provisions of Fed. R. Civ. P. 56, and the case authorities interpreting that rule.

F.R.C.P. 56 states in part:

"(a)… a party may move for summary judgment, identifying each claim or defense… on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law…"

"(c)(1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Grimaldi, as the party moving for summary judgment, bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Findwhat Inverstor Group, et al. v. Findwhat.com, et. al.* 658 F. 3d 1282, 1307(11th Cir. 2011).

A material fact is one that "might affect the outcome of the suit under the governing law", *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To discharge its burden with respect to the instant motion, Grimaldi must demonstrate a lack of evidence supporting the nonmoving parties' case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) and *Essex Insurance Co. v. Barrett Moving & Storage, Inc.*, 885 F. 3d 1292, 1303 (11th Cir. 2018). After Grimaldi has met its burden under F.R.C.P 56(c), the burden of production shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

Where the record, taken as whole, could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In the instant matter, Grimaldi contends that there is no admissible evidence in the record to support an essential element of Plaintiffs negligence claim, and upon which Plaintiffs bear the burden of proof at trial, that any breach of duty on the part of Grimaldi was a proximate or legal cause, in whole or in part, of the fire occurring onboard *Hoegh Xiamen* on June 4, 2020.

### CLAIMANTS STATEMENT OF MATERIAL FACT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant GRIMALDI sets forth the following undisputed facts:

1. At the time of the incident, the M/V Höegh Xiamen ("Vessel") was a roll on, roll off pure car and truck carrier (PCTC) that would typically load automobiles, and high heavy cargo such as trucks, boats, and construction equipment. Loeuis (Michael Loeuis Dep. 20:15-21:14, July 13, 2022[1])

2. Defendant Hoegh Autoliners Management AS was the manager and operator of the Vessel (Hoegh Ans. at ¶9).

3. The Vessel was time chartered to Grimaldi at the time of the accident. (Grimaldi Ans. at ¶ 13).

4. At the time of the incident, the Vessel was transporting used vehicles in the U.S to West Africa trade. (Loeuis Dep. 19:13-21:18).

5. Grimaldi contracted with a landside terminal operator Horizon Terminal Services ("Horizon Terminals), to receive and store the vehicles in Jacksonville while awaiting shipment aboard a vessel. (Loeuis Dep. 21:19-23:7).

6. Grimaldi contracted with SSA Atlantic, LLC ("SSA") to provide stevedores that loaded the cargo aboard the ship. (Loeuis Dep. 23:18-24:9).

7. The Vessel arrived in Jacksonville on or about June 2, 2020, and the loading began at 0800 on June 3, 2023. in order to load a cargo of used motor vehicles

---

[1] Michael Loeuis' Deposition is filed at E.C.F. 120-2).

and other equipment that was ultimately destined for port in West Africa. (Loeuis Dep. 43:1-6; 44:25-45:3).

8. In accordance with the stowage plan, motor vehicles were to be loaded onto cargo decks 6, 11, 8 (holds 3-4 on the midship to aft part of the vessel), 5 and 3 on June 3, and cargo decks 3, 5, 7, 8 (holds 1 and 2), 9, and 10, with deck 7 being the last deck loaded. (Loeuis Dep. 55:23-59:11; 79:6-14).

9. The Vessel's fire detection system for all cargo decks was disabled prior to the commencement of loading operations on 3 June 2020. (Xiulei Zhang Dep. 20:20-23, Dec. 20, 2022[2]).

10. The final cargo deck to complete loading was cargo deck 7. The final motor vehicle was loaded and lashed onto that deck before 14:45 on 4 June 2020. (Loeuis Dep. 91:14-92:12).

11. A total of 358 vehicles were loaded in Jacksonville on deck 8. A form provided by SSA to the Vessel crew indicated that 13 of the 358 vehicles did not have a battery disconnected. (Loeuis Dep. 152:19-25; Zhang Dep. 45:4-47:16).

12. After the completion of loading, Grimaldi Port Captain Michael Loeuis, walked through the cargo decks up to cargo deck 9 using interior ramps. The purpose of his walk through was to estimate how much space was left to load

---

[2] Xiulei Zhang's Deposition is filed at E.C.F. 119-1).

additional vehicles at the next load port. After Mr Loeuis had finished his walk though, he disembarked the Vessel and advised a female member of the vessel's crew at 15:00 that loading operations were complete at 14:45. (Loeuis Dep. 91:14-94:5).

13. After leaving the vessel, Grimaldi's Port Captain went to do paperwork in a nearby office, the departed to his hotel. He left the terminal at approximately 15:30, and was called by SSA and advised of the fire while getting fuel for his vehicle at a nearby gas station. (Loeuis Dep. 97:8-14; 100:14-101:2).

14. Following the completion of loading operations, the Vessel's crew completed walkthroughs shortly after loading was complete. (Zhang Dep. 44:1-6).

15. After completing his walkthrough, the Chief Officer proceeded to the weather deck (deck 12) to close the ramps on the vessel. While doing so, he saw smoke coming out of the nearby ventilation exhaust house cargo decks 7 and 8 (which formed a common space). (Zhang Dep. 66:3-68:24).

16. After detecting the smoke, the Chief Officer turned on the fire detection system which detected smoke on decks 7 and 8. (Zhang Dep. 69:19-70:20).

17. The Chief Office notified the Master via a walkie-talkie and directed a crewmember to investigate. (Zhang Dep. 69:19-70:20).

18. The Vessel's crew investigated cargo decks 7 and 8 and found the lights out on deck 8, and sparks coming down from deck 8 to deck 7 on the starboard side aft with a lot of smoke. (Zhang Dep. 71:9-72:18).

19. The Hoegh Crew unsuccessfully attempted to fight the fire with fire extinguishers and hoses. (Zhang Dep. 76:5-77:12).

20. A team of firefighters from Jacksonville Fire and Rescue (JFRD) arrived alongside the Vessel at 16:03. The Chief Officer advised them of the fire and the JFRD asked the crew to evacuate. (Zhang Dep. 77:9-80:5; Jeffrey Baker Dep. 23:3-28:17; 41:8-17[3]).

21. After conferring with the arriving JFRD firefighters, the Master ordered the Chief Officer and the Chief Engineer back on to the Vessel to release CO2 from the fixed CO2 firefighting system. (Zhang Dep. 84:2-5).

22. At approximately 16:25, Chief Drysdale reported by radio that deck 8 was full of smoke and the air was toxic because the Vessel crew activated the CO2 system. (Charles Drysdale Dep. 94:23-98:15; 229:1-18[4]).

23. By 16:55, Chief Jolly performed an initial reconnaissance and reported smoke on cargo decks 7 through 10, and heat on decks 8 and 9. No visible fire was

---

[3] Jeffrey Baker's deposition is filed at E.C.F. 119-9.
[4] Charles Drysdale's Dep. Is filed at E.C.F. 119-3.

        detected on any cargo deck. (Kristopher Jolly Dep. 111:3-112:14, March 17, 2022[5]).

24. At approximately 17:33 the first JFRD team entered deck 8 with a hose to attack the fire. Explosions were reported shortly thereafter and were ultimately determined to be tires popping. (Jolly Dep. 118:24-119:25).

25. After over two hours and 30 minutes of fighting the fire, JFRD ordered Ladder 7 to open ventilation for decks 7, 8, and 9. Approximately 60 seconds later, the Ladder that opened the ventilation reported that: "shortly after they opened that door, the whole ship began to vibrate, like it's getting agitated, and it started to make a noise louder than anything I heard before.  And we knew something bad was about to happen, so we dropped what we were doing and we just took off running.  You don't normally see firemen run." The hatch blew at 18:43. (Jolly Dep. 146:3-154:11; Jonathan McMullen Dep. 69:1-23, 73:22-77:13, 81:4-82:8, Jun. 22, 2023[6]).

26. Moments after the first explosion, JFRD again ordered Ladder 7 to open additional ventilation.  After doing so there was a second explosion (backdraft) that injured the Plaintiffs. Ladder 7 departed the ship as quickly as possible. (McMullen Dep. 82:7-85:7).

---

[5] Kristopher Jolly's deposition is filed at E.C.F. 120-2.
[6] Jonathan McMullen's deposition is filed at E.C.F. 120-3.

27. There is no evidence to show that any vehicle loaded on decks 7 or 8 in the suspected area of origin was leaking any fluid after loading. If fluid had been leaking from a vehicle, the vehicle would have been rejected and placed back ashore. (Loeuis 62:3-63:9; Zhang Dep. 31:2-34:18, 38:18-39:23; Paul Way Dep. 194:18-21, June 21, 2023[7]).

28. There was no physical evidence to determine where the fire originated. The suspected area of origin was based "almost completely" on crew observing a fire on the starboard side of deck 8 aft of frame 34. (John Atherton, PhD. Dep. 66:3-21, May 31, 2023[8]).

29. In the general area of suspected origin, 63 vehicles and vessel components were thoroughly inspected between June 2020 and March 2022. This included inspections on the vessel, removal and detailed inspection of the 63 vehicles and vessel components, and lab testing using an electron microscope in order to determine the cause and origin of the fire. (Atherton Dep. 21:1-57:24; 105:9-106:3)

30. There was no evidence to prove or eliminate an electrical fault in any of the vehicles on decks 7 or 8 as a cause of the fire. (Way Dep. 192:14-193:4;

---

[7] Paul Way's deposition is filed at E.C.F. 119-6.
[8] John Atherton Dep. Is filed at E.C.F. 120-13.

Bolcar Dep. 240:19-241:10, 243:1-5; Harshman Dep. 211:21-215:24; Atherton Dep. 103:17-117:18; 119:9-124:7).

31. There was no evidence to prove or eliminate an electrical fault in the Vessel's electrical system on decks 7 or 8 as a cause of the fire. (Harshman 168:18-169:3; 169:22-171:4; 174:6-7[9]; Atherton Dep. 131:22-144:22).

32. There was no evidence to prove or eliminate human agency, such as a cigarette, on decks 7 or 8 as the cause of the fire. (Bolcar Dep. 216:14-217:25; Harshman Dep. 186:1-187:11; Atherton Dep. 116:7-117:7).

33. There was no evidence to prove or eliminate a foreign object in any vehicle on decks 7 or 8 as the cause of the fire. (Harshman 160:21-161:14; Way Dep. 192:14-193:4; Atherton Dep. 124:8-131:6).

## THE CAUSE AND ORIGIN OF THE FIRE ONBOARD HOEGH XIAMEN ON JUNE 4, 2020 IS UNDETERMINED

As detailed in the Statement of Material Facts, Grimaldi does not dispute that while making preparations for sailing, and sometime after loading of cargo had been completed and the one representative of Grimaldi had departed the vessel, an officer and or crewman onboard *Hoegh Xiamen* detected smoke coming from ventilation ducts on the vessel's weather deck, and upon further investigation by crewman, reported that fire and smoke were present on deck 8 of the vessel. In response to the

---

[9] Robert Harshman's deposition is filed as E.C.F. 120-.

onboard fire, the vessel's captain called for assistance in combating the fire, and thereafter numerous units and personnel of the JFRD, including Plaintiffs, attempted to suppress or extinguish the onboard fire. During such efforts, one or more explosions occurred within 60 seconds of the JFRD ordering ventilation to be opened to allow oxygen into the cargo decks. Plaintiffs have alleged the second explosion caused injuries to Plaintiffs.

In an Order earlier entered in this matter denying various motions to dismiss by defendant's, including Grimaldi, the Court noted the following:

> "Under general Maritime law, negligence is an actionable wrong that contains the same basic elements as a land-based negligence claim: (1) duty; (2) breach; (3) causation; (4) damages", (doc.67)

In addition, in the same Order, as to the basis for Plaintiff's negligence claims against non-vessel operating defendants such as Grimaldi, the Court held:

> ". . .with respect to the remaining Defendants, their involvement stems from their role in starting the fire by negligently maintaining or loading the Vessel" (doc.67).

Without prejudice to Grimaldi's objections to certain holdings in the Court's earlier order (doc.67), including the holding that the general maritime law negligence duty of reasonable care under the circumstances could be supplemented by, Fla. Stat. §112.182, Grimaldi contends that Plaintiffs burden of proof to establish

by admissible evidence all elements of their negligence based claims for relief, including causation, must be satisfied.

As noted in the Statement of Material Facts, while extensive examination of the vessel and its cargo occurred over several years with numerous experts, and extensive discovery of both fact and expert witnesses has been undertaken by the parties, no admissible evidence exists that any breach of duty or failure to exercise reasonable care in maintaining or loading cargo on *Hoegh Xiamen* was a source of ignition and a contributing cause of the fire. Conjecture and guesswork, particularly by expert witnesses, that a connected battery cable, an improperly disconnected battery cable, an electrical fault, or flammable fluid leaking from a car loaded onboard *Hoegh Xiamen* was the source of ignition is speculation-not admissible evidence. After months of detailed and exhaustive examination, no expert witness has been able to identify any vehicle, vessel component, foreign object, or other human cause of the fire. As set forth more fully in Grimaldi's motions to exclude the testimony of Paul Way (doc. 136), Robert Harshman (doc. 135 ), Robert Stoller (doc. 137), and Thomas Bolcar (doc. 138), the cause and origin of the fire which was subsequently detected by the vessel's crew, and was subject to the subsequent firefighting efforts by the JFRD, including Plaintiffs, is undetermined.

Grimaldi submits that absent admissible evidence from a fact and/or expert witness as to the source of ignition, and that such source of ignition was due to a

breach of a duty to use reasonable care by Grimaldi, an essential element of Plaintiffs claim for relief, causation, cannot be proved.

Grimaldi contends that, in the instant matter, when the Plaintiffs cannot provide admissible evidence that any breach of duty or failure to use reasonable care was a cause of ignition for the fire which occurred on *Hoegh Xiamen* on June 4, 2020, a rational trier of fact could not find that the source of ignition was due to a breach of duty or failure to use reasonable care on the part of Grimaldi, and Plaintiffs will have failed to prove a claim upon which relief can be granted.

## CONCLUSION

In view of the foregoing, Plaintiffs' negligence claims against Grimaldi should not proceed to trial, and Grimaldi's Motion for Summary Judgment on Liability should be granted.

Respectfully submitted,

*/s/ David J. Pope*
Eric C. Thiel – FBN 016267
David F. Pope – FBN 164452
BANKER LOPEZ GASSLER P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Telephone: (813) 221-1500
Facsimile: (813) 222-3066
Service-ethiel@bankerlopez.com
Service-dpope@bankerlopez.com
*Attorneys for Defendant, Grimaldi Deep Sea S.p.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 1, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

_____
David F. Pope – FBN 164452