**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KRISTOPHER JOLLY, et al.,
Plaintiffs,
vs. CASE NO.: 3:20:cv-1150-MMH-MCR

HOEGH AUTOLINERS
SHIPPING AS; et al.
Defendants.

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO BIFURCATE TRIAL INTO LIABILITY AND DAMAGES PHASES (Doc. 119)**

This Court should deny Defendants' Motion and proceed with the unified trial the Court has ordered, and that the parties have been working diligently towards for the past two years. Defendants' proposal, under the guise of efficiency, will instead result in prolonging this litigation beyond the current trial term and effectively reducing to zero any chance the case settles before trial.

As explained herein, this is an inappropriate case for bifurcation. Splitting the trial into liability and damages phases would not only prejudice the plaintiffs and delay the ultimate resolution of this matter, but it would take significantly more time and resources for the Court to conduct two trials when one would resolve the case in full. Defendants' motion should be denied.

## I. Bifurcation is Inappropriate in this Case

### A. Applicable Law & Burden of Proof on Motion to Bifurcate

"Chief among the characteristics of federal litigation is the principle, with few exceptions, that a case is to be tried as a single unit and not broken into piecemeal trials." *Ward v. Estaleiro Itajai S/A*, 541 F. Supp. 2d 1344, 1353 (S.D. Fla. 2008). The reason bifurcation remains the exception, not the rule, is because courts "are expected to act to 'secure the just, speedy, and inexpensive determination of every action.'" *Trading Tech. Int'l, Inc. v. Espeed, Inc.*, 431 F. Supp. 2d 834, 836 (N.D. Ill. 2006) (citations omitted).

Rule 42(b) provides that a district court "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue ...." While the decision of whether to bifurcate a trial is left to the sound discretion of the district court, this Court has explained that "**bifurcation is not routinely granted**." *Bandsuch v. Werner Enterprises, Inc.*, 2007 WL 9706002, at *1 (M.D. Fla. Dec. 20, 2007) (emphasis added) (citing *State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 318 (5th Cir. 1978) (cautioning that "separation of issues is not the usual course that should be followed, and that the issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without injustice"); Fed. R. Civ. P. 42(b), Advisory

Committee Notes (recognizing that bifurcation should not be ordered routinely)).

In addition to convenience, prejudice, expedition, and judicial economy, a district court may also consider the following factors: (1) "whether the issues sought to be tried separately are significantly different"; (2) "whether they are triable by jury or the court"; (3) "whether discovery has been directed to a single trial of all issues"; (4) "whether the evidence required for each issue is substantially different"; (5) "whether one party would gain some unfair advantage from separate trials"; (6) "whether a single trial of all issues would create the potential for jury bias or confusion"; and (7) "whether bifurcation would enhance or reduce the possibility of pretrial settlement." *Bandsuch,* (quoting *Kimberly-Clark Corp. v. James River Corp. of Virginia*, 131 F.R.D. 607, 608 (N.D. Ga. 1989)).

The party seeking separate trials has the burden of showing that judicial economy would be served **and** the balance of potential prejudice weighs in favor of bifurcation. *Trading Techs. Intern*, 431 F. Supp. 2d at 837. In determining whether to bifurcate a trial, courts have looked to judicial efficiency, possibility of needless delay, potential juror confusion, the timing of the request for bifurcation, whether any filing delay was tactical, the overlap of evidence and witnesses between the two trials, and prejudice to each party.

*Valois of America, Inc. v. Risdon Corp.*, 1998 WL 1661397, *3 (D. Conn. 1998) (cataloging district court cases).

### B. APPLICATION OF THE RELEVANT FACTORS DEMONSTRATES THAT THIS IS AN INAPPROPRIATE CASE FOR BIFURCATION

This case has been set for a traditional unified 21-day trial to begin in February. *See* (Doc. 108). Discovery on all issues (liability and damages) is complete, and the case is in the final stages before trial.

The Court was crystal clear with the parties that it was "concerned about the length of time this case has been pending and wishes to assure that it proceeds without unnecessary delay. As such, the Court grant[ed the final agreed extension of the scheduling order] with the expectation that the parties will meet the remaining deadlines **and not request additional extensions of time**." (Doc. 108, p. 1) (emphasis added).

Now, however, Defendants seek additional and unnecessary delay beyond the conclusion of the scheduled trial through their bifurcation motion. Defendants waited until the day before the dispositive motion deadline and after discovery on <u>all issues</u> had closed to suggest, for the first time, that this case should be bifurcated into two separate proceedings. Defendants' motion should be denied. There is no need for further delay, and Defendants' post-discovery bifurcation motion appears to be nothing more than a tactical move to prejudice Plaintiffs. *See Brown v. Toscano*, 630 F.Supp.2d 1342, 1347 (S.D.

Fla. 2008) (holding "unreasonable delay in a case's resolution amounts to **prejudice to the one opposing separation. It is clearly not in the public interest**.") (emphasis added).

Defendants' central premise is that the trial in this case will be "massive" and "will tax the resources of the Court and of all the parties." However, everyone has known the breadth of this case from the beginning and that is precisely why the Court set this matter for a 21-day trial two years ago. Counsel has been living this case for the past two years getting it ready for trial under the existing order. The Court can handle this case, the litigants can handle the case, the parties have engaged in discovery on both liability and damages, and there is no valid reason to bifurcate.

Defendants' suggestion that bifurcation will save time or resources is also misplaced. Plaintiffs and Defendants have expended countless attorney hours and likely several million dollars combined getting this case ready to be tried **in its entirety** during the allotted 21 days. This is not a situation like the case cited in Defendants' motion, where "[b]ifurcation could … save the parties significant funds in retaining experts on damages and medical treatment[.]" (119 at 13) All that work has already been done and all that money long spent. The litigants are ready for the full trial. *See NuVasive, Inc. v. Absolute Medical, LLC.,* 2021 WL 7184488, *9 (M.D. Fla 2021) ("All of the counts are triable by jury, discovery in this case has proceeded for nearly four

years with the understanding that a single trial of all issues would occur, and **bifurcation would greatly reduce the possibility of pretrial settlement** … the Motion to Bifurcate will be denied.") (emphasis added).

Defendants' contention that bifurcation is warranted because "the second portion of the action will be unnecessary" if "the jury finds that the Defendant is not liable for Plaintiff's injuries" is likewise meritless. *See* (Doc. 119 at 13). This unremarkable observation by Defendants could be said for every civil case. Unsurprisingly, this argument is routinely rejected by courts as unpersuasive. *See, e.g.,*

- *Dzafic v. Geovera Specialty Ins. Co.,* 2008 WL 3874602, *1 (M.D. Fla. 2008) ("A civil case by its very nature almost always involves the dual issues of liability and damages. Following Defendant's argument to its logical conclusion, every civil trial should therefore be conducted in two phases to avoid confusing the jury. **Clearly, this is an untenable position.**");

- *Brown v. Advantage Engineering, Inc.,* 732 F.Supp. 1163, 1171 (N.D. Ga. 1990) (finding "Defendant's observation that a jury determination of no liability would eliminate the need for a trial on damages is true in any negligence case- **it does not advance the cause of bifurcation**.");

- *King v. Celebrity Cruises, Inc.,* 2017 WL 5640729, *2 (S.D. Fla. 2017) ("Although bifurcation would promote judicial economy if a jury finds that the defendant is not liable for negligence, **it would result in unnecessary delay if the defendant is found liable**.");

- *Lima v. Wal-Mart Stores, Inc.,* 2008 WL 11334149 (S.D. Fla. 2008) (Finding "Defendant's argument that economy would be served by bifurcation unpersuasive because the bifurcation of the issues of damages and liability at the trial stage would **result in two**

> **trials and double the amount of time to bring finality to this matter**.").

Defendants' bravado for why bifurcation is warranted—they win on liability—is also far from guaranteed. And, of course, if Defendants are wrong, "the Court and parties will need to expend additional resources . . . conducting a second trial on damages." *Campbell v. Pirelli, LLC.,* 2013 WL 12092519 at 2 (S.D. Fla. 2013). Clearly, bifurcation would not be an efficient use of judicial resources.

Defendants' Motion makes several other arguments that warrant a brief response.

**Length of Depositions**: This is an apples to oranges comparison. Just because the depositions were lengthy (Defendants attach 1400 pages of deposition transcripts to their motion) does not mean the trial testimony will be of comparable length. The point of a discovery deposition is to explore all opinions and ferret out what matters from what does not. Unlike discovery depositions, trial testimony necessarily cuts right to the chase for the jury (or risks being cut-off by the judge). Plaintiffs have no intention of dragging this case out and all parties have planned on completing the entire trial within the 21-day period currently scheduled. Moreover, this Court is well-equipped to manage its courtroom and keep the proceedings on track.

**Treating physicians**: Plaintiffs fully disclosed their treating physicians per Rule 26(a)(2)(c) in an abundance of caution, but they are not calling 50+ treating physicians as suggested in Defendants' motion. This would be neither economically feasible nor manageable for anyone involved. The defense team knows this and has elected not to depose any of the treating physicians. Defendants have, however, deposed most of the expert physicians Plaintiffs are calling. In fact, as Defendants list out on page 8, Plaintiffs have utilized retained physicians such as Doctors Lichtblau, Myers, and Danzinger to maximize efficiency by permitting a single physician to testify regarding multiple Plaintiffs. Defendants have utilized this same method with their expert physicians (Drs. Deese, Merkler, Herkov, and Parker) —all of whom have been deposed. As far as testifying treating physicians, Plaintiffs will call at most 15, but are aiming to present less than 10.

**"Bifurcation will [Not] increase the odds of a pre-trial settlement":** This is a zero-offer case where all sides have expended significant resources (Plaintiffs have expended more than $750,000 in hard costs and Defendants have presumably each spent at least as much) getting the case ready for the full trial. The only incentive for any Defendant to get serious about resolving the case is an impending trial that will result in a judgment.

As opposed to increasing the odds of settlement, bifurcation guarantees the case will not settle, if ever, until after the currently scheduled trial term ends. Thus, bifurcation will not encourage settlement, it would instead ensure at least one —but in all likelihood, two— trials, which will take much longer than the single unified trial currently scheduled. Defendants are not going to try and settle once the threat of an impeding verdict is taken away – bifurcation of this case incentives further litigation and disincentives settlement. *See NuVasive,* 2021 WL 7184488 at *9 ("[B]ifurcation would greatly reduce the possibility of pretrial settlement.").

**Bifurcation would create —as opposed to prevent— unfair prejudice**: If Defendants get their way, the message to the jurors would be something like this at the beginning of trial: "It will take approximately two to three weeks to hear testimony on who is at fault for starting the fire, letting it get out of control, and injuring the firefighters. At the end of this part, you all will deliberate. If you decide for all Defendants, you get to go home. If you decide for Plaintiffs, however, it will take approximately one to two more weeks for you to hear from many of the same witnesses again before you deliberate as to damages." Any "leave early" option in a 21-day trial would drastically increase the odds of a defense verdict given the sacrifices these jurors are making to take this amount of time away from their lives. This would be highly and unfairly prejudicial to Plaintiffs.

Indeed, this prejudice is not hypothetical or speculative, it is proven. "[E]mpirical research suggests that an advantage is accorded to defendants when civil trials are bifurcated. According to a University of Chicago Law School study, while civil defendants win forty-two percent of cases tried in the traditional, unified manner, they win seventy-nine percent of the cases in which the liability issue is submitted alone. Bifurcation thus appears to tilt the scales of justice in favor of defendants." Jennifer M. Granholm & William J. Richards, *Bifurcated Justice: How Trial-Splitting Devices Defeat the Jury's Role*, 26 U. Tol. L. Rev. 505, 513 (1995) (emphasis added).

An analysis of reported cases in Florida reached a similar conclusion concerning the inherent prejudice to the plaintiff when jurors are presented an opportunity to leave before learning the harms the negligence caused. "Although plaintiffs won (received any verdict) in 59.5% of all personal injury cases that were not bifurcated, plaintiffs prevailed only 23.5% of the time when the cases were bifurcated." Dan Cytryn, *Bifurcation in Personal Injury Cases: Should Judges Be Allowed to Use the "B" Word?,* 26 Nova L. Rev. 249, 264 (2001). The unfair prejudice to Plaintiffs is clear, and it is extreme. *See also Levesque v. GEICO,* 2016 WL 1156288, *6 (S.D. Fla. 2016) ("A piecemeal approach would only serve to delay the resolution of this case with no benefit to outweigh such a delay. Such a delay would needlessly prejudice the Plaintiffs.")

**Overlap between liability and damages**: Assuming the jury only hears about liability in the first phase, all 11 Plaintiffs would then have to be re-called in the second phase to once again describe in detail, how they were injured by the blast and the damages sustained. In this case, the vast majority of the damages sustained are intangible and stem directly from what the firefighters experienced fighting the fire on the ship. A second trial covering only the issue of damages would require recalling all these same witnesses and would not only waste time but would likely needlessly confuse the jurors by breaking up the interconnected testimony. *See National Laboratories, LLC., v. United Healthcare Group, Inc.,* 2018 WL 8333913, *2 (S.D. Fla. 2018) ("The additional expense of calling the same witnesses to testify at two trials weighs against bifurcation.") (citing *Campbell v. Pirelli,* 2013 WL 12092519, *2 (S.D. Fla. 2013) ("[I]t is not clear that bifurcation would promote judicial economy . . . [and] bifurcation may impose additional costs on Plaintiffs by forcing them to recall multiple witnesses[.]")).

Furthermore, the fact that all Plaintiffs would have to testify twice showcases that the two aspects of the case are not sufficiently distinguishable to warrant bifurcation in the first place. There is no risk of confusing the jury by trying the issues of liability and damages in a single case. *See Brown v. Advantage Engineering, Inc.,* 732 F.Supp. 1163, 1171 (N.D. Ga. 1990) (Finding that "both plaintiff and [defendant] assert that separate trials would require

them to recall several out-of-state witnesses, indicating that bifurcation would inhibit, rather than promote, efficient judicial administration. The need to recall these witnesses also indicates that the issues of liability and damages are not significantly different.").

**Prejudice from burn injuries:** Defendants further suggest this trial should be bifurcated because some of Plaintiffs' burn injuries may invoke sympathy from the jury. (Doc. 119 at 17). Following Defendants' logic, any personal injury case involving extensive injuries and a sympathetic plaintiff should be handled in two separate trials. Clearly, this proposal is not feasible, and federal courts have repeatedly rejected this argument. *See Levesque,* 2016 WL 1156288 at *6 ("If evidence of high damages alone created undue prejudice that required bifurcation of liability and damages, then bifurcation would be the rule rather than the exception."); *Christie v. Scott,* 2013 WL 618089, *4 (M.D. Fla. 2013) ("[T]his is no different than any other case in which something bad happens to someone—testimony from the victims' loved ones is always emotional. Defendants have offered no specific reason why this case is different from the general rule that **all aspects of the case should be tried together.**") (emphasis added).

Furthermore, while Plaintiffs are not suggesting for a second that their injuries are not significant or life altering, this is not a case where there are highly graphic or disturbing burn photographs that could inflame jurors. Burn

victims are just as entitled to a unified trial as other personal injury victims, and courts have not suggested otherwise. Rather, courts have confirmed time and again that juries are capable of impartially determining liability and damages in a single trial even where plaintiffs are seriously injured.

In *Brown v. Advantage Engineering, Inc.*, 732 F.Supp. 1163 (N.D. Ga. 1990), the plaintiff suffered severe burns following the explosion of an oil treating machine. Claiming that evidence of the plaintiff's severe burns and "extensive injuries" might inflame the jury, the defendants moved to bifurcate. The defendants argued that trying the two issues simultaneously would "hold a definite potential to adversely and improperly affect a jury's fair, impartial and objective consideration of liability issues." *Brown,* 732 F.Supp. at 1171. The district court rejected this argument: "This reasoning, however, would support bifurcation in any negligence action brought by a sympathetic plaintiff. The court is confident that with the aid of cautionary instructions, a jury will be able to fairly and impartially determine both liability and damages in a single trial." *Id. See also Lima,* 2008 WL 11334149 at *1 ("Defendant's reference to possible jury sympathy is unpersuasive because there is an element of jury sympathy in every case, and if every case were bifurcated, the Court would never complete all the trials.").

In *Campbell v. Pirelli Tire, LLC.*, 2013 WL 12092519 (S.D. Fla. 2013), the plaintiffs suffered severe injuries when a motorcycle wheel failed. The

defendants moved to bifurcate the matter, arguing that "if the jury is required to consider injury and damage evidence at the same time [that] they are determining liability, the jury may be more sympathetic to the Plaintiffs, thus prejudicing the defendants[.]" *Id.* at *1. As in *Brown,* the *Campbell* court held that these contentions were unfounded: "the Court is not persuaded by Defendants' argument that the jury may be unduly sympathetic to Plaintiffs if they consider damages at the same time as liability…If Defendants remain concerned that the jurors may be sympathetic to Plaintiffs, the Court can issue an appropriate instruction addressing their concern." *Id.* at 2.

Just like the defendants in *Brown* and *Campbell*, Defendants in this case urge this Court to grant their motion for bifurcation because they fear the impact that evidence of the plaintiffs' burn injuries may have on the jury. These fears are unfounded, and do not weigh in favor of bifurcation. The suggestion that jurors would violate their oath based on sympathy is an offensive assumption lacking any support. *See* 11th Cir. Pattern JI 3.2.2 ("Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone."); and *United States v. Lopez*, 649 F.3d 1222 (11th Cir. 2011) ("We presume that juries follow the instruction given to them.").

## II. Conclusion

Plaintiffs have waited a long time for their day in court and they should not be forced to put on only a portion of their case when this Court is capable of fully and fairly resolving this litigation with one trial. Nothing has changed since the Court scheduled (without objection) a traditional trial two years ago. This dispute should conclude within the allotted 21 days and Defendants' request to split what should be one trial into two will prejudice Plaintiffs, delay full resolution of this matter, and remove any chance the case settles. Accordingly, this Court should deny Defendants' joint motion for bifurcation and proceed with a unified trial as scheduled.

Respectfully submitted,

**PAJCIC & PAJCIC, P.A.**

*/s/ Benjamin E. Richard*

**CURRY GARY PAJCIC, Esq.**
Florida Bar No.: 21301
**THOMAS F. SLATER, Esq.**
Florida Bar No.: 614114
**BENJAMIN E. RICHARD, Esq.**
Florida Bar No.: 13896
One Independent Drive, Ste. 1900
Jacksonville, FL 32202
Telephone: (904) 358-8881
Telefax: (904) 354-1180
Curry@pajcic.com; Tom@pajcic.com;
Ben@pajcic.com
Secondary email: Rose@pajcic.com;
MichelleH@pajcic.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 14, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of filing to all counsel of record.

**PAJCIC & PAJCIC, P.A.**

*/s/ Benjamin E. Richard*
______________________________
**CURRY GARY PAJCIC, Esq.**
Florida Bar No.: 21301
**THOMAS F. SLATER, Esq.**
Florida Bar No.: 614114
**BENJAMIN E. RICHARD, Esq.**
Florida Bar No.: 13896
One Independent Drive, Ste. 1900
Jacksonville, FL 32202
Telephone: (904) 358-8881
Telefax: (904) 354-1180
Curry@pajcic.com; Tom@pajcic.com; Ben@pajcic.com
Secondary email: Rose@pajcic.com; MichelleH@pajcic.com
***Attorneys for Plaintiffs***