UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

| | |
|---|---|
| KRISTOPHER JOLLY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>HOEGH AUTOLINERS SHIPPING AS, et al.,<br><br>    Defendants. | 3:20-cv-001150-JAR-MCR<br><br>OPINION AND ORDER RE: MOTIONS FOR SUMMARY JUDGMENT |

## INTRODUCTION

Before the court are five motions for summary judgment. They are: Def., Grimaldi Deep Sea S.P.A.'s Mot. for Summ. J. on Claims of Negligence, ECF No. 139 (Aug. 1, 2023) ("Grimaldi Mot."); Defs. Hoegh Autoliners Shipping AS and Hoegh Autoliners Management AS's Mot. for Summ. J., ECF No. 126 (Aug. 1, 2023) ("Hoegh Mot."); SSA Atlantic, LLC's Mot. for Summ. J. on All Claims, ECF No. 120 (Aug. 1, 2023) ("SSA Mot."); SSA Atlantic, LLC's Mot. for Summ. J. on Claims of Charles Drysdale, ECF No. 131, (Aug. 1, 2023) ("Drysdale Mot."); Def. Horizon Terminal Services, LLC's Mot. For Summ. J., ECF No. 141 (Aug. 1, 2023) ("Horizon Mot."). For the following reasons laid out below, all Defendants' motions for summary judgment are denied.

## BACKGROUND

Plaintiffs are firefighters and first responders with Jacksonville Fire & Rescue ("JFRD"). Am. Compl. at ¶ 5, ECF No. 5 (Oct. 9, 2020) ("Am. Compl."). On June 4, 2020, the M/V Hoegh Xiamen ("the Vessel"), a cargo ship, was berthed at the Blount Island Marine Terminal in

Case No. 3:20-cv-001150-JAR-MCR

Jacksonville, Florida. Id. at ¶ 17. Defendant SSA Atlantic LLC ("SSA") was the stevedore responsible for loading approximately 1,500 "used/junked/wrecked vehicles" onto the Vessel for international transport. Id. at ¶ 15. The Vessel was owned by a nonparty but was bareboat chartered to Defendants Hoegh Autoliners Shipping AS and Hoegh Autoliners Management AS (collectively, "Defendants Hoegh") who time chartered the Vessel to Defendant Grimaldi Deep Sea S.P.A. ("Grimaldi"). Id. at ¶¶ 19–20. Grimaldi contracted with Defendant Horizon Terminal Services, LLC ("Horizon") to receive used cars for shipment onboard the Hoegh Xiamen, and with SSA to load the cars and to ensure that all of the batteries in the used cars were disconnected prior to transit. National Transportation Safety Board Hazardous Materials Group Factual Report, Hoegh Xiamen Roll on – Roll off Vehicle Carrier Fire, Blount Island, St. Johns River, Jacksonville, Florida at 6–13, ECF No. 163-18 (Sept. 11, 2023).

The Vessel caught fire shortly after the loading operations were completed. Am. Compl. at ¶ 25. The Plaintiffs were among approximately 120 JFRD personnel who responded to the scene, where they attempted to extinguish the fire and ensure the safety of the Vessel and its crew. Id. at ¶ 27. This dispute arises out of injuries that the Plaintiffs allege were incurred as a result of fighting that fire. Id. at ¶ 45. Plaintiffs argue that the fire started because of the Defendants' negligence. Id. at ¶¶ 51, 57, 63, 68. Defendants counter that no one can identify the ignition source for the fire, let alone the cause of the ignition source. Grimaldi Mot. at 13–14; Horizon Mot. at 2; SSA Mot. at 3.

To prove causation in this case, Plaintiffs plan to introduce a fire cause and origin expert, Mr. Paul Way. Pls.' Rule 26(A)(2) Retained Expert Witness Disclosures at 3, ECF No. 119-5 (July 31, 2023) ("Plaintiffs' Witness Disclosures "). Mr. Way will testify that he believes the only possible source of the fire onboard the Vessel was a car battery that either was not disconnected

OPINION AND ORDER - 2

Case No. 3:20-cv-001150-JAR-MCR

or was improperly disconnected. Jensen Hughes Expert Report at 18, ECF No. 134-1 (Aug. 1, 2023) ("Paul Way Report").[1] Two additional witnesses the Plaintiffs plan to introduce, CAPT Bolcar and CAPT Stoller, discuss the proper standard of care in stevedoring and maritime fire response, asserting that the prevailing standard of care in the industry required the Defendants to ensure all batteries were disconnected and to respond effectively to the fire once it occurred. Plaintiffs' Witness Disclosures at 2–3; CAPT Mitchell Stoller Report at 26–27, ECF No. 140-7 (Aug. 1, 2023) ("Stoller Report"); Hoegh Xiamen Vessel Fire Report at 3, ECF No. 138-2 (Aug. 1, 2023) ("Bolcar Report").[2] With the aid of this expert testimony, Plaintiffs plan to argue that all Defendants were negligent in loading the vehicles, and that this negligence caused an improperly connected battery to remain onboard the Vessel, which in turn led to the fire. Pls.' Resp. in Opp'n to SSA Atlantic's Mot. for Summ. J. at 1–2, ECF No. 167 (Sept. 11, 2023) ("Pls.' Resp. to SSA"); Pls.' Resp. in Opp'n to Grimaldi Deep Sea's Mot. for Summ. J. on Claims of Negligence at 8–10, ECF No. 164, (Sept. 11, 2023) ("Pls.' Resp. to Grimaldi"). Plaintiffs further argue that the crew failed to respond appropriately to the blaze or to communicate adequately with the firefighters once they arrived, and that this failure to fight the fire and failure to communicate about the fire led to it burning more fiercely, for longer, and ultimately led to the injuries sustained by the Plaintiffs. Resp. in Opp'n to Hoegh Autoliners Shipping and Hoegh Autoliners Management's Mot. for Summ. J. at 4–13, ECF No. 165 (Sept. 11, 2023). What the standard of care in the industry required of these Defendants' is a matter for trial but is not the focus of the

---

[1] All Defendants challenged the admissibility of Mr. Way's opinions on Daubert grounds. The court in a simultaneously issued order denied that motion and found that Mr. Way is qualified for the purposes of Daubert to testify as an expert on all his proffered opinions.

[2] Defendants challenged the admissibility of these experts' testimony on Daubert grounds. In simultaneously issued orders, the court has found both experts qualified for the purposes of Daubert to testify as to the critical portions of their reports.

OPINION AND ORDER - 3

Case No. 3:20-cv-001150-JAR-MCR

motions in this case, which predominantly argue that Plaintiffs' theory of the case fails to successfully prove causation.

Defendants have requested summary judgment on several different grounds. Grimaldi, Horizon, and SSA all argue that no competent evidence exists to support the Plaintiffs' causation theory and therefore Plaintiffs' negligence claims fail. Grimaldi Mot. at 13–14; Horizon Mot. at 2; SSA Mot. at 3. Horizon additionally argues that, even if the court accepts the Plaintiffs' causation theory, there is insufficient evidence to prove that Horizon's failure to screen the cars properly led to a car with an improperly disconnected battery being onboard the Vessel. Horizon Mot. at 12–13. Defendants Hoegh request summary judgment on the grounds that they sufficiently met their duty to the firefighters upon their arrival and the argument that the firefighters' decision to ventilate the decks while fighting the fire was a superseding cause that relieves them of liability for the Plaintiffs' injuries. Hoegh Mot. at 1–2.

SSA has filed two motions for summary judgment in this case. See generally SSA Mot.; Drysdale Mot. In one, it argues that it is entitled to summary judgment on all claims because no competent evidence supports tying it to the fire's cause, and because JFRD's intervening actions represent a superseding cause that removes any liability it might have. SSA Mot. at 1–3. In the second, SSA argues that it is entitled to summary judgment against the Plaintiff Charles Drysdale's emotional damages claims, because he was outside the zone of danger for the incident and because he did not sustain the requisite physical injury to support a negligence claim under maritime law. Drysdale Mot. at 1–3.

Plaintiffs reply that competent evidence supports that an improperly connected battery caused the fire, that all parties are tied to that event and that all parties were negligent in allowing the fire to occur and/or in their response to the fire. Pls.' Resp. to Defs. Hoegh at 1–3; Pls.' Resp.

OPINION AND ORDER - 4

Case No. 3:20-cv-001150-JAR-MCR

to SSA at 1–2; Pls.' Resp. to Grimaldi at 1–3; Resp. in Opp'n to Horizon's Mot. for Summ. J. at 1–2, ECF No. 166 (Sept. 11, 2023). Plaintiff Charles Drysdale additionally responds that he was within the zone of danger and incurred a physical injury and so his claim should survive summary judgment. Pl. Charles Drysdale's Resp. in Opp'n to SSA's Mot. for Summ. J. at 1–2, 13, ECF No. 168 (Sept. 11, 2023) ("Drysdale Resp.").

For reasons discussed more fully below, all of these motions are denied.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998 (11th Cir. 1992)). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52.

The moving party bears "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S.

OPINION AND ORDER - 5

Case No. 3:20-cv-001150-JAR-MCR

317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Where the nonmoving party bears the burden of proof at trial, the moving party may discharge this "initial responsibility" by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial.  United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (en banc).

On summary judgment, "the evidence of the non-movant is to be believed."  Anderson, 477 U.S. at 255.  "The district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences . . . in his favor."  Four Parcels, 941 F.2d at 1428 (internal quotations and citations omitted).

## II. A dispute of material fact remains as to what started the fire

### i. There is evidence that supports the theory that a car started this fire

Grimaldi, Horizon,[3] and SSA all argue that summary judgment is appropriate because the cause of the fire here is undetermined, and what started the fire is a necessary element of causation in this case, which in turn is a necessary element of the Plaintiffs' negligence claim.  Grimaldi Mot. at 13–14; Horizon Mot. at 2; SSA Mot. at 3.  Plaintiffs reply that evidence exists to support

---

[3] Grimaldi and Horizon additionally argue Plaintiffs' failure to identify which car in particular in the area of origin started the fire is fatal to their case.  Grimaldi Mot. at 13–14; Horizon Mot. at 2. Plaintiffs analogize the facts of this case to those in Tolentino v. United Parcel Serv., Inc., No. 98-CV-10369, 2001 WL 92201, at *5 (D. Mass. Jan. 11, 2001), where the court held that, because USPS had exclusive control of the trailer where the fire started and both causes of fire alleged by the Plaintiffs were fairly attributable to USPS, Plaintiffs did not need to prove which cause started the fire, only that one of the two theories advanced by Plaintiffs likely did.  The court finds the facts from Tolentino illustrative of the causation issues raised here; while this case features multiple Defendants involved in the loading process for these cars, each Defendant had exclusive control over its piece of the loading process, and each Defendant was involved in the loading process for all of the cars onboard.  If one or more of the cars onboard caught fire, that car was onboard as a result of the Defendants' actions in this case.  As the Defendants are responsible for all of the cars onboard, in order to satisfy the causation requirement, Plaintiffs need not point to which car specifically started the fire, if they can prove that a car likely did.

OPINION AND ORDER - 6

Case No. 3:20-cv-001150-JAR-MCR

their theory that the fire was started by a car improperly screened and improperly loaded into the area of the origin of the fire, Deck 8. Pls.' Resp. to Grimaldi at 13–16; Pls.' Resp. to Horizon at 2; Pls.' Resp. to SSA at 1–3.

The question before the court is whether there is a material dispute of fact which if resolved in Plaintiffs' favor could result in judgment for the Plaintiffs. See Allen, 121 F.3d at 646 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986))). As all parties agree, what started the fire is critical to the Plaintiffs' negligence claim. See Grimaldi Mot. at 13–14; Horizon Mot. at 2; SSA Mot. at 3. The parties in this case dispute what started the fire, and evidence exists to support the Plaintiffs' theory that it was started by a negligently disconnected battery. Plaintiffs provide evidence of their causation theory through the testimony of their expert, Mr. Way. See Paul Way Report at 18. Here, Grimaldi, Horizon, and SSA have all failed to demonstrate that no dispute of material fact exists.

**ii. Evidence exists that links all Defendants, including Horizon, to the negligent conduct asserted**

Horizon additionally argues that given its limited role in this process, no reasonable trier of fact could possibly hold it liable for this fire. Horizon Mot. at 10–12. Horizon argues that, even if Plaintiffs could prove a fire started in a car, Plaintiffs would need to stack too many inferences to tie a breach on its part to the presence of that car on the Vessel, as it would require the vehicle loaded onboard to be in the same condition in which it was received at the time of the fire. Horizon Mot. at 10–13. To support this theory, Horizon has asserted that the cars waited for loading for a substantial period of time in an outdoor lot and were then loaded onto the Vessel by SSA, not Horizon. Horizon Mot. at 10–11. Whether the passage of time and intervening actions break the

OPINION AND ORDER - 7

Case No. 3:20-cv-001150-JAR-MCR

chain of causation for Horizon is a question that has not been sufficiently answered with specific evidence from Horizon at this stage. As an initial matter, evidence exists that Horizon accepted damaged cars with a known potential to serve as a fire hazard once loaded onboard.[4] Pls.' Resp. to Horizon at 1–2. The question before the court at the summary judgment stage is whether enough evidence exists on this issue to present a genuine dispute of material fact which if resolved in the Plaintiffs' favor would result in a judgment for Plaintiffs. Fed. R. Civ. P. 56(c). Here, the evidence offered by Plaintiffs is sufficient to create a genuine issue of material fact, making summary judgment inappropriate on this issue.[5]

### III. The backdraft was not a superseding cause warranting summary judgement

Defendants Hoegh[6] and SSA both contend that JFRD's decision to reopen the ventilation hatches, causing a second backdraft, was an intervening cause that relieves them of liability for the

---

[4] Horizon argues that the evidence offered by the Plaintiffs to support this point is insufficient to prove that a breach may have occurred in this case because it is not evidence related to cars located within the origin area for the fire. Horizon Mot. at 13–19. This argument ignores the role of circumstantial evidence in proving causation in fire cases, where direct evidence is often destroyed by the fire itself. See Elosu v. Middlefork Ranch Inc., 26 F.4th 1017, 1028 (9th Cir. 2022). Although physical evidence is limited in this case, physical evidence from the area of origin is not necessarily required to prove causation here, though Defendants are free to attack its non-existence at trial. Here, as in other fire cases, Plaintiffs will have to prove what caused the fire through circumstantial evidence, common sense, and expert testimony. See, e.g., Elosu, 26 F.4th at 1028.

[5] Horizon additionally argues that even if the fire started in a car, if Plaintiffs cannot identify which car started the fire it is impossible for any reasonable fact finder to tie any breach on Horizon's part to the cause of that fire. Horizon was responsible for screening all of the cars loaded onto the Vessel, and evidence exists to support the Plaintiffs' claim that Horizon accepted cars that it should have rejected. Whether a breach on Horizon's part occurred, and whether that breach is a proximate cause of the damages the firefighters allege, is a question of fact for the jury.

[6] Defendants Hoegh also argue that they did not breach the duty of reasonable care because the crew supplied the firefighters with all information necessary to the fight the fire. Defendants Hoegh Mot. at 1. Plaintiffs disagree. Pls.' Resp. to Hoegh 4. Evidence supports that a material dispute remains between the parties as to whether or not adequate communication occurred. See Stoller Report at 26–27; see also Bolcar Report at 21–22.

OPINION AND ORDER - 8

Case No. 3:20-cv-001150-JAR-MCR

Plaintiffs' injuries.[7] Defendants Hoegh Mot. at 1–2; SSA Mot. at 3. Plaintiffs reply that Defendants Hoegh do not dispute Plaintiffs' allegation that Defendants Hoegh failed to prevent, detect, and extinguish the fire, and so are not entitled to summary judgment on that matter. Pls.' Resp. to Hoegh at 4. They further reply that ample evidence exists to connect both parties to the Plaintiffs' injuries and JFRD's firefighting was not an intervening cause. Pls.' Resp. to Hoegh at 4; Pls.' Resp. to SSA at 1–2.

An intervening cause must be of independent origin and not foreseeable. Exxon Co., U.S.A. v. Sofec, Inc., 517 U.S. 830, 837 (1996) (citation omitted). Here, fighting the fire is not a cause independent of its origin, for the need to respond to the emergency would not exist but for the emergency's cause. Likewise, injuries from firefighting are a foreseeable risk of response to a fire.[8] Superseding events will only relieve a party of liability where the intervening actions are "extraordinary." Exxon Co. v. Sofec, Inc., 54 F.3d 570, 574 (9th Cir. 1995), aff'd sub nom. Exxon

---

[7] Defendants Hoegh further claim that the Plaintiffs cannot rely on the ISM Code to establish negligence, and that the unseaworthiness claim must be stricken because the Plaintiffs are not longshoreman. Hoegh Mot. at 22–23. Plaintiffs reply that Defendants Hoegh are merely attempting to rehash failed arguments from their motion to dismiss, and further assert that they are not arguing that the ISM Code created any duties for Defendants or making an unseaworthiness claim. Pls.' Resp. to Hoegh at 20. Reviewing the court's opinion on the motion to dismiss, the court agrees that the unseaworthiness argument made by Defendants Hoegh has already been ruled on. Jolly v. Hoegh Autoliners Shipping AS, 546 F. Supp. 3d 1105, 1115 (M.D. Fla. 2021) (citing to In re Garda Marine, Inc., No. 88-2282, 1992 WL 321213, at *1 (S.D. Fla. Apr. 23, 1992)). Based on reviewing the record and Plaintiffs' attestation that they are not making an ISM based claim, the court reads Defendants Hoegh's ISM Code argument here as an argument about the admissibility of the ISM Code as evidence of negligence. That is not a basis for granting summary judgment as there is evidence of negligence unrelated to the ISM Code.

[8] The parties dispute whether or not the firefighters' actions in this case were a reasonable method of fighting the fire, and Defendants Hoegh argue that the method of fighting the fire was so unreasonable it was not possible for Defendants Hoegh to foresee a risk of the injuries that occurred. Defendants Hoegh Mot. at 1–2. If the firefighters fought the fire poorly and suffered for it, it may be an issue of comparative negligence, and affect the allotment of damages. Pope & Talbot v. Hawn, 346 U.S. 406, 408–09 (1953). It is not, however, relevant at this stage of litigation. The court need not decide at this point whether comparative negligence is applicable. If it applies, it would not lead to summary judgment here.

OPINION AND ORDER - 9

Case No. 3:20-cv-001150-JAR-MCR

Co., U.S.A. v. Sofec, Inc., 517 U.S. 830 (1996) (citing Hunley v. Ace Maritime Corp., 927 F.2d 493, 497 (9th Cir. 1991)). Where the negligent conduct of an actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, a superseding cause will not relieve the actor of liability unless the harm caused by the third party is intentionally caused by that third party and is outside of the scope of risk created by the actor's actions. E. Hampton Dewitt Corp. v. State Farm Mut. Auto. Ins. Co., 490 F.2d 1234, 1241 (2d Cir. 1973). Here, no harm was caused intentionally, and injuries from firefighting are completely within the scope of risk caused by the failure to prevent a fire. The backdraft has not been established as a superseding cause that breaks the chain of causation, and summary judgment is not appropriate on this ground.

**IV.** **SSA is not entitled to summary judgment against Plaintiff Charles Drysdale**

SSA argues for summary judgment on Plaintiff Charles Drysdale's ("Chief Drysdale") emotional distress claim because it alleges that Chief Drysdale cannot recover for this claim under maritime law.[9] Drysdale Mot. at 19. Plaintiff responds that Chief Drysdale can recover for his emotional damages because he was in the "zone of danger" for the incident. Drysdale Resp. at 13.

Federal maritime law requires that, in order to be able to recover for emotional distress, a plaintiff must satisfy the "zone of danger" test, which limits recovery for emotional injury to those plaintiffs who are placed in immediate risk of physical harm by the defendant's negligence. Chaparro v. Carnival Corp., 693 F.3d 1333, 1337–38 (11th Cir. 2012) (citing to Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 548 (1994)). In order to satisfy the test, a plaintiff must only meet one of the criteria: either he must have suffered a physical impact as a result of the defendant's

---

[9] The court notes that the claim does not include a specific claim for negligent infliction of emotional distress, but rather a claim for negligence, seeking damages for physical and emotional injuries. Am. Compl. at ¶¶ 47–68. The court interprets this summary judgment motion as an argument that because Chief Drysdale cannot recover for emotional distress under maritime law, summary judgment is appropriate to limit his recovery in this case.

OPINION AND ORDER - 10

Case No. 3:20-cv-001150-JAR-MCR

negligent conduct, or he must have been placed at risk of an immediate physical impact by the defendant's negligent conduct. Gottshall, 512 U.S. at 547–48 (1994).

SSA argues that Chief Drysdale cannot recover under either of these theories because he was neither injured by the backdraft nor at risk of immediate harm from it. Drysdale Mot. at 12. Plaintiffs allege that SSA's negligent conduct led to the fire, not merely the backdraft incident. Drysdale Resp. at 2; Am. Compl. at ¶ 45. As discussed supra at 8–10, sufficient evidence exists to continue to trial on whether SSA's negligence caused the fire. If SSA's negligence did indeed cause the fire, then it will be responsible for damages flowing from the entire fire event, not merely the backdraft incident.

When considering the whole of the fire, Chief Drysdale's claim survives under either prong of the "zone of danger" test. Under the zone of danger's risk of physical harm test, Chief Drysdale's claim would survive. Evidence indicates that Chief Drysdale both was placed at risk of harm during the blaze and recognized that risk of harm to himself and those who were fighting the fire with him, at the time it occurred. For example, debris was falling so close to Chief Drysdale that he directed the post he was stationed at be moved to avoid that debris.[10] Drysdale Dep. at 167:23–168:10, ECF No. 131-5 (Aug. 2, 2023). That evidence is sufficient to establish that Chief

---

[10] SSA suggests that evidence of Chief Drysdale's focus on others indicates that he was neither objectively at risk of harm nor did he subjectively fear harm. Drysdale Mot. at 13–14. Other evidence suggests, however, that Chief Drysdale did have an apprehension of harm at the time of the backdraft incident. Drysdale Dep. at 167:23–168:10. It does not appear to the court that evidence of Chief Drysdale's concern for others and his continued ability to act while in the zone of danger necessarily negates the evidence of his apprehension of harm. This is particularly true given Chief Drysdale's profession; those trained in emergency response are routinely required to act and focus on others despite the dangerous circumstances in which they operate. Whether Chief Drysdale's actions are evidence of a lack of a subjective apprehension of harm or evidence of an ability to act despite an apprehension of harm is a question of fact for the jury. At the summary judgment stage, the court need only decide whether SSA has persuasively presented that the record as a whole indicates that no rational trier of fact could decide for the Plaintiff. Anderson, 477 U.S. at 252 (1986). It has not.

OPINION AND ORDER - 11

Case No. 3:20-cv-001150-JAR-MCR

Drysdale met the perceived risk aspect of the zone of danger test. Evidence also supports that Chief Drysdale suffered a physical impact as a result of fighting the fire. Drysdale Mot. at 9–10; Drysdale Resp. at 7. Further evidence exists that ties Chief Drysdale's mental injury to those physical injuries.[11] If it is ever appropriate to attempt to dissect exactly which aspects of his emotional injuries relate to which aspect of the zone of danger, it is not now.

Because sufficient evidence exists to support Chief Drysdale's claim for emotional damages, summary judgment is therefore inappropriate and will be denied.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Grimaldi's Motion for Summary Judgment, see ECF No. 139, is denied; **ORDERED** that Defendant Horizon's Motion for Summary Judgment, see ECF No. 141, is denied; **ORDERED** that Defendants Hoegh's Motion for Summary Judgment, see ECF No. 126, is denied; **ORDERED** that SSA's Motion for Summary Judgment on All Claims, see ECF No. 120, is denied; **ORDERED** that SSA's Motion for Summary Judgment On Claims Of Charles Drysdale, see ECF No. 131, is denied.

/s/ Jane A. Restani
Jane A. Restani, Judge[*]

Dated: January 26, 2024
New York, New York

---

[11] Because he suffered burns and heat stroke fighting the fire, Chief Drysdale had to step back from actively fighting the fire. Drysdale Resp. at 5–7. The fact that Chief Drysdale was sidelined from actively fighting the blaze because of his injuries led to Chief Drysdale later being in the best position to hear the call for aid and step out of rehab to take over medical triage when the explosion occurred. Drysdale Resp. at 5–6. A reasonable jury might find that the experience that exacerbated the psychological impact for Chief Drysdale would not have happened but for the fire's physical impact on Chief Drysdale.

[*] Judge Jane A. Restani, of the United States Court of International Trade, sitting by designation.

OPINION AND ORDER - 12